UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:  
BUNKERS INTERNATIONAL CORP.,

    Debtor.
_____/

Bankr. Case No. 6:15-bk-7397-CCJ
Chapter 11

## AUSTRALIAN BUNKER SUPPLIER'S EMERGENCY MOTION TO COMPEL REJECTION OF EXECUTORY CONTRACT OR, ALTERNATIVELY, REQUEST FOR RELIEF FROM THE AUTOMATIC STAY

### AND

### CERTIFICATE OF NECESSITY OF REQUEST FOR EMERGENCY HEARING

Creditor, AUSTRALIAN BUNKER SUPPLIER'S C.I. S.A.S. ("ABS"), through counsel and pursuant to section 365(d) of the Bankruptcy Code[1], hereby files this Motion to Compel Rejection of the Executory Contract, and in support thereof states as follows:

### JURISDICTION AND VENUE

1.    BUNKERS INTERNATIONAL CORP. ("Debtor") filed a voluntary petition under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. (the "Bankruptcy Code"), on August 28, 2015.

2.    The Court has jurisdiction under 28 U.S.C. § 1334 to hear this matter, which is a core proceeding pursuant to 28 U.S.C. §§ 157(b).

3.    The statutory predicates for the relief requested herein are 11 U.S.C. § 365(d)(2) and Rule 6006(b) of the Federal Rules of Bankruptcy Procedure.

---

[1] Unless otherwise noted, any section listed herein is a reference to the corresponding section of the Bankruptcy Code.

## FACTUAL BACKGROUND

4. On January 1, 2009 Debtor and ABS entered into a Marketing and Distribution Agreement (the "Agreement"). A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

5. The Agreement provides that ABS is to deliver fuel for Debtor in the port of Buena Ventura, Colombia (the "Colombia Port"), on an exclusive basis. Significantly, the Agreement provides that either party may terminate the Agreement upon thirty days' notice. Therefore, assumption of the Agreement is not a practically viable option.

6. Amendment Number One to the Agreement, signed January 1, 2014, extends the term of the Agreement to January 1, 2025. A true and correct copy of the Amendment Number One to the Agreement is attached hereto as **Exhibit B**.

7. Debtor's obligation to ABS under the Agreement is to market, sell and distribute marine fuels and lubricants (the "Product") to ship-owners and charterers ("Customers") on a global basis. In accordance with the Agreement, Debtor provides funds to ABS and ABS then acquires the fuel, mixes the fuel to the required consistency, and delivers the fuel, typically by barge delivery, to the Customers in the Colombia Port.

8. In 2012, 2013 and 2014, Debtor ordered and ABS delivered an average of 2,649.45 metric tons ("MT") per month.

9. ABS is a small, family owned business with twenty-six (26) employees. It derives essentially all of its business from the revenue from the Agreement. For ABS to remain in business it must continue its trade with Debtor in an amount no less than the prior three year period.

10. For over sixty (60) days, Debtor has provided **NO** business to ABS and ABS has not delivered any fuel to any Customers.

11. ABS received its last order from Debtor on July 29, 2015. In accordance with the Agreement, ABS acquired the fuel ordered but Debtor failed to provide additional funds for ABS to acquire the mixing stock that is required to "blend" the fuel for delivery to large vessels. ABS has continued to store that "unblended fuel" in its barges. Since July 30, 2015, ABS has continued to store and maintain the fuel at significant expense which has exceeded $200,000 for the prior two months.

12. ABS has not received any payment from Debtor since July 2015, and it appears that Debtor, as a result of it financial difficulties, has ceased marketing the Product to all Customers in breach of the Agreement.

13. Due to the low volume of sales throughout the beginning of 2015 (an average of 2,750.47 metric tons monthly), followed by 0 sales in August and September, ABS is in a dire financial situation.

14. As a result of the Debtor's bankruptcy filing and its lack of funding, Debtor will be unable or unwilling to perform its obligations under the Agreement, namely directing bunker sales to ABS, which will force ABS into filing bankruptcy itself.

15. ABS has repeatedly inquired of the Debtor, during the last two months, regarding when it will re-commence trading in fuel. But no answers have been provided. ABS simply cannot remain ready, willing and able to perform under the Agreement, at enormous expense, while waiting for the Debtor to be able to perform, especially now when it appears the Debtor cannot possibly perform.

16. Debtor, and presumably PNC Bank, are aware that ABS has the "unblended fuel" purchased from the last order in late July, 2015, in storage. ABS has offered that the Debtor immediately either remove the fuel or authorize ABS to trade the fuel, and remit the market price

for the fuel to Debtor, less storage costs and other expenses.

17. ABS has been approached by a party that is willing to broker fuel deliveries with ABS in the Colombia Port. If ABS cannot conduct business with any other party, while the Debtor remains unable to deliver business to ABS but maintains its options with respect to the Agreement, ABS will suffer irreparable harm.

18. ABS requests an order compelling the Debtor to reject the executory contract pursuant to 11 U.S.C. § 365(d)(2). Alternatively, ABS requests the Court to terminate the automatic stay so that ABS may exercise its rights under the Agreement and terminate the Agreement.

## LEGAL ARGUMENT

### Motion to Compel Rejection

19. Although a Chapter 11 debtor ordinarily is entitled to wait until the confirmation of its Chapter 11 Plan to decide whether to assume or reject executory contracts, the provisions of 11 U.S.C. § 365(d)(2) empower a bankruptcy court to shorten this time upon the request of a non-debtor counter-party to such a contract.

20. When a non-debtor counter-party to an executory contract "seeks an earlier determination of whether the trustee or debtor in possession will assume or reject the contract, the settled rule ... is that the trustee or debtor in possession [should be given] a reasonable time within which to decide." 3 Collier on Bankruptcy, ¶365.05[2][a] at 365-43 (16th Ed. 2010); *see also* In re Travelot Co., 286 B.R. 462 (Bankr. S.D. Ga. 2002) (embracing reasonable time approach). What is a reasonable time depends on the facts and circumstances of the particular case. In re Dunes Casino Hotel, 63 B.R. 939, 949 (D.N.J. 1986) (citing Theatre Holding Corp. V. Mauro, 681 F.2d 102, 105 (2d Cir. 1982).

21. In considering the issue of "reasonableness," courts have traditionally "balance[d] the debtor's need to carefully consider whether rejecting the executory contract is in the best interests of the estate with the [non-debtor counter-party's] interest in knowing whether the debtor will perform under the [contract]." In re Sae Young Westmont-Chicago, L.L.C., 276 B.R. 888, 893 (Bankr. N.D. Ill. 2002); *see also* In re EnCap Golf Holdings,LLC, 2008 WL 4200324 (Bankr. D.N.J. 2008) (in deciding whether to shorten the time for a Chapter 11 debtor to assume or reject an executory contract, a bankruptcy court may consider the interests of the non-debtor party pending the debtor's decision to assume or reject).

22. Pursuant to this balancing test, courts have recognized that when it is inevitable that a Chapter 11 debtor will ultimately seek a particular form of relief with respect to an executory contract (*i.e.*, assumption, or, alternatively, rejection), there is generally no legitimate reason for allowing the debtor to delay such action. *See*, *e.g.*, In re Resource Technology Corporation, 254 B.R. 215, 227 (Bankr. N.D. Ill. 2000) (wherein the court required a Chapter 11 debtor to make a prompt decision to assume or reject an executory contract when it was inevitable that the debtor would ultimately seek to assume the contract in question); *see also* In re Hawker Beechcraft, Inc., 483 B.R. 424, 430-1 (Bankr. S.D.N.Y. 2012) (wherein the court expressed skepticism about the debtor's purported doubts as to whether it would ultimately seek to assume an intellectual property license and, therefore, required the debtor file a motion to assume the license within thirty days).

23. Similarly, courts have consistently refused to allow a Chapter 11 debtor to delay the decision to assume or reject an executory contract when the debtor is failing to honor the terms of the contract during the post-petition period and/or is otherwise unfairly putting the non-debtor counter-party's rights and interests in jeopardy. *See*, *e.g.*, In re EnCap Golf Holdings, LLC, 2008 WL 5955350 (Bankr. D.N.J. 2008) (wherein the court required the debtor to assume or reject an

executory contract within 20 days after concluding, among other things, that allowing the debtor to further delay such a decision would result in greater detriment to the non-debtor counter-party than benefit to the debtor); In re Rebel Rents, Inc., 291 B.R. 520, 531 (Bankr. C.D. Cal. 2003) (citations and quotations omitted) (wherein the court required the debtor to file a motion to assume or reject an equipment lease within the 30 days after noting that the debtor had failed to honor the terms of the lease during the post-petition period and, by delaying the decision to assume or reject, was essentially attempting to have its cakes and eat it too).

24.     Turning to the case at hand, the Debtor has made it clear that it cannot currently perform under the Agreement because of its current capital situation, as testified to by the Debtor's principal at the Section 341 Meeting of Creditors.  Moreover, with the Agreement subject to termination by either party upon thirty (30) days notice, there is no prospect that the Debtor would be able to assume the Agreement and assign it to another party. Indeed, there does not appear to be any reason why the Debtor has not already sought to reject the Agreement with ABS. The breathing room afforded under 11 U.S.C. § 365(d)(2) is designed to provide Chapter 11 debtors with a sufficient opportunity to assess whether a particular contract or lease is necessary and beneficial to the debtor's long-term reorganization efforts.

25.     Similarly, it is clear that the ongoing delay in Debtor's rejection of the Agreement imposes an unjustifiable burden upon ABS. Specifically, because the status of the Agreement remains "open," ABS cannot proceed as if the Agreement is no longer in effect but, instead, must maintain appropriate measures to insure that it remains prepared to fully perform under the Agreement, as ABS has done to date at the significant costs referenced above.  Clearly, Debtor should not be allowed to continue to require ABS to bear the foregoing expenses and lost opportunity costs - especially, when Debtor is unable to posit any legitimate interest for wanting to delay

rejection of the Agreement.

26. For all of the foregoing reasons, ABS maintains that Debtor should be compelled under 11 U.S.C. § 365(d)(2) to immediately assume or reject the parties' Agreement.

### Alternative Request for Relief from Automatic Stay

27. Alternatively, ABS seeks relief from the automatic stay for cause.

28. Section 362(d)(1) provides, in pertinent part, that on the request of a party in interest, the court may lift the automatic stay for cause, including lack of adequate protection.

29. The continuation of the automatic stay under 11 U.S.C. § 362 will cause real and irreparable harm to ABS for the following reasons:

    A. ABS continues to store unblended fuel for Debtor without the ability to either purchase the additional mixing stock that is necessary to blend with the unblended fuel or contract with other Customers.

    B. Debtor has specifically acknowledged that its current lack of capital has prevented it from performing under the contract.

30. In balancing the prejudice to the Debtor against the hardship to ABS, the hardship to ABS if the court does not grant relief from stay greatly outweighs the prejudice to the Debtor. In re Aloisi, 261 B.R. 504, 508 (Bankr. M.D. Fla. 2001).

31. ABS can demonstrate significant hardship based on months of nonperformance by Debtor, which provides the foundation for lifting the automatic stay. See In Matter of Joyner, 55 B.R. 242 (Bankr. M.D. Ga. 1985); In Matter of West Electronics, Inc., 852 F.2d 79 (3d Cir. 1988).

32. Furthermore, relief from stay is warranted pursuant to 11 U.S.C. § 362(d)(2) by virtue of the Debtor's inability and failure to provide any order flow to ABS during the past 60 days, and it appears unlikely that Debtor's Agreement with ABS and the Colombia Port business are necessary for Debtor's successful reorganization.

33. Additionally, due to the irreparable damage that ABS is suffering, ABS respectfully requests that the Court consider the motion on an expedited basis. 11 U.S.C. § 362(f).

34. Because the witnesses for ABS are located in Colombia, ABS requests an initial emergency preliminary hearing on this matter, which ABS suggests will require approximately twenty (20) minutes of hearing time. ABS requests that at that time a final emergency hearing be set at the earliest possible time.

### CERTIFICATE OF NECESSITY OF REQUEST FOR EMERGENCY HEARING

35. I HEREBY CERTIFY, as a member of the Bar of the Court, that I have carefully examined the matter under consideration and to the best of my knowledge, information and belief formed after reasonable inquiry, all allegations are well grounded in fact and the contentions are warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law can be made, that the matter under consideration is not interposed for any improper purpose, such as to harass, to cause delay, or to increase the cost of litigation.

36. I HEREBY CERTIFY that there is a true necessity for emergency hearing, specifically, because: (1) ABS continues to incur significant damages, including the maintenance and storage costs referenced herein, as well as lost profits; and (2) ABS's inability to trade continues to have a significant impact on its reputation as well as its credit line, and ABS will soon be out of business.

WHEREFORE, AUSTRALIAN BUNKER SUPPLIER'S C.I. S.A.S. respectfully requests that this Honorable Court enter an Order (i) compelling Debtor BUNKERS INTERNATIONAL CORP to immediately assume or reject the Agreement; or in the alternative, (ii) granting AUSTRALIAN BUNKER SUPPLIER'S relief from the automatic stay; and also (ii) granting such other and further relief as the Court deems just and proper.

Dated October 1, 2015.

                                  Respectfully submitted,

                                  */s/ Bradley M. Saxton*

                                  _____
                                  BRADLEY M. SAXTON
                                  Florida Bar No. 0855995
                                  bsaxton@whww.com
                                  **WINDERWEEDLE, HAINES, WARD & WOODMAN, P.A.**
                                  390 North Orange Avenue, Suite 1500
                                  Post Office Box 1391
                                  Orlando, Florida 32802-1391
                                  AUSTRALIAN BUNKER SUPPLIER'S C.I. S.A.S.

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 1st day of October, 2015, a true and correct copy of the foregoing has been furnished via:

**CM/ECF to:**

U.S. Trustee, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801
R. Scott Shuker, Latham Shuker Eden & Beaudine, LLP, P.O. Box 3353, Orlando, FL 32802

**U.S. Mail to:**

Bunkers International Corp, 1071 S. Sun Drive, Suite 3, Lake Mary, FL 32746
Americas Bunkering, LLC, 1071 S. Sun Drive, Suite 3, Lake Mary, FL 32746
Atlantic Gulf Bunkering, LLC, 1071 S. Sun Drive, Suite 3, Lake Mary, FL 32746
Dolphin Marine Fuels, LLC, 1071 S. Sun Drive, Suite 3, Lake Mary, FL 32746

                                  */s/ Bradley M. Saxton*

                                  _____
                                  BRADLEY M. SAXTON