## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:

BUNKERS INTERNATIONAL CORP., et al.,

        Debtors.

_____/

Case No.: 6:15-bk-07397-CCJ
Chapter 11

(Jointly Administered[1])

### DEBTOR'S RESPONSE IN OPPOSITION TO THE COMMITTEE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS (Doc. No. 144) AND OBJECTION TO THE COMMITTEE'S NOTICE OF RULE 2004 EXAMINATION _DUCES TECUM_ (Doc No. 110)

Bunkers International Corp., debtor in possession in the above captioned case ("**Debtor**"), by and through its undersigned counsel, submits this Response in Opposition to the Official Committee of Unsecured Creditors' ("**Committee**") Motion to Compel Production of Documents (the "**Motion**") (Doc. No. 144), and Objection to the Committee's Notice of Rule 2004 Examination _Duces Tecum_ (the "**Notice**" or "**2004 Exam**") (Doc. No. 110), and in support thereof respectfully states as follows:

### Background

1.      On August 28, 2015, (the "**Petition Date**"), the Debtor commenced its reorganization case by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et. seq. (the "**Bankruptcy Code**"). The Debtor is authorized to continue to operate its business and manage its operations as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 30, 2015, the United States Trustee for the Middle District of Florida appointed the Committee pursuant to section 1102 of the Bankruptcy Code (Doc. No.

---

[1] Jointly administered cases: Bunkers International, LLC, Case No. 6:15-bk-07397-CCJ; Americas Bunkering, LLC, Case No. 6:15-bk-07400-CCJ; Atlantic Gulf Bunkering, LLC, Case No. 6:15-bk-07402-CCJ; and Dolphin Marine Fuels, LLC, Case No. 6:15-bk-07404-CCJ.

76). The Committee consists of three members: (a) Orion Holdings Limited, (b) Tropic Oil Company, and (c) Sprague Operating Resources, LLC.

3.      On October 13, 2015 counsel for the Committee served an informal document request through Debtor's counsel (the "**Initial Request**").  The Committee's Initial Request is attached hereto as <u>Exhibit</u> "<u>A</u>, which specifies a number of "priority" documents the Committee specifically sought production of, although most of the information initially requested is subject to Debtor's objections set forth below.  The Initial Request was not included with the Committee's Motion, but does serve to show the Court how many of the requested items are "non-priority" items as the Committee has designated them.

4.      Following service of the Initial Request, Debtor's counsel and counsel for the Committee engaged in a series of communications wherein Debtor indicated it would: (1) provide all documents previously submitted to the United States Trustee's Office; (2) insure that PNC Bank provided all of its loan documents related to the Debtor; and (3) provide documents based upon a refined request for documents sufficiently tied to the circumstances of this case. Debtor delivered on its promises by providing the documents previously submitted to the United States Trustee's Office, and by having PNC Bank provide its loan documents. Despite Debtor delivering on its end, the Committee never submitted a refined request for documents, instead electing to pursue a broader set of document requests.

5.       On October 23, 2015, the Committee propounded a thirteen page Notice of Rule 2004 Examination upon Debtor containing 52 document requests. *See* attached Notice of Rule 2004 Examination attached hereto as <u>Exhibit</u> "<u>B</u>". The extensive, and largely irrelevant, list of documents unnecessarily expanded the information to be gathered, rather than prioritizing the

information to be gathered which the parties had previously exhibited they were capable of doing.

6.      Between November 12th and 19th, 2015, Debtor's counsel and counsel for the Committee continued to pare down and prioritize the documents required to assist the Committee's evaluation of Debtor's case. Debtor's counsel produced a number of additional documents based upon the prioritized list and further provided responses for any documents from the prioritized list that could not be produced, based on privilege or otherwise.

7.      Further, on November 17, 2015, the Committee's counsel suggested the use of its financial advisor as an efficient method of collecting additional information. Debtor's counsel, with an eye on increasing administrative costs in a search for largely irrelevant information, indicated in his response that the timing of such a visit would have to be scheduled at a later time. The office visit was in fact scheduled for a week later.

8.      On November 23, 2015, despite Debtor's attempts to maintain cooperation with regard to the Committee's extensive requests for production, the Committee filed its Motion to Compel which surprisingly states, "[Debtor] has produced very limited documents." *Motion to Compel*, pg. 1, ¶ 1.

9.      The next day, GlassRatner Advisory & Capital Group, LLC ("GlassRatner"), the Committee's retained financial advisor and forensic accountant, visited Debtor's offices for the purpose of downloading and extracting additional financial information of the Debtor. Following the visit, GlassRatner requested three additional items from Debtor: (i) monthly financial statements; (ii) bank statements; and (iii) monthly Accounts Payable reports for January through April 2015. Each of these requested items was subsequently produced, and as of the filing of this Response no further requests from GlassRatner have been issued to Debtor. Debtor has included,

as an exhibit hereto, a complete listing of the documents supplied to the Committee or downloaded by GlassRatner. *See* attached List of Documents Submitted to the Committee attached hereto as <u>Exhibit "C"</u>.

**A. The Committee's Motion to Compel Should be Denied As Moot**

10.     As illustrated by the events above, the Committee should be denied the extraordinary remedy of compelling Debtor to produce a litany of additional documentation, especially in light of GlassRatner's recent unfettered access to Debtor's records and opportunity to obtain same. Debtor has indicated its willingness to cooperate without the need for Court involvement. Based upon the foregoing, the Committee's Motion should be denied as moot.

**B. Debtor's Objection to the Committee's Notice Should be Sustained as the Committee's Discovery Requests Exceed the Permissible Scope of Rule 2004.**

11.     The Committee's discovery requests are overly, broad, burdensome, and not directly related to the legitimate interests of its members' unsecured claims and, therefore, the requests are beyond the permissible scope of Fed. R. Bankr. P. 2004 ("***Rule 2004***"). While it is true Rule 2004 affords a party in interest an opportunity to conduct a wide-ranging examination with respect to a debtor's financial affairs, the ability to do so is not limitless. *See In re Texaco, Inc.*, 79 B.R. 551, 553 (Bankr. S.D.N.Y. 1987) (the scope of the examination is not without limits, the examination should not be so broad as to be more disruptive and costly to the debtor than beneficial to the creditor); *Snyder v. Society Bank*, 181 B.R. 40, 41-42 (S.D. Tex. 1994) (the scope of Rule 2004 is not limitless); *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (there are important limits to the scope of an examination under Rule 2004). The party seeking to conduct a Rule 2004 examination must show good cause for the examination which it seeks. *In re Eagle-Picher Industries, Inc.*, 169 B.R. 130, 134 (Bankr. S.D. Ohio 1994). In order to demonstrate good cause, a movant must demonstrate that such examination is

necessary for the protection of its legitimate interests. *See In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991). Moreover, even if the Official Committee can show that a Rule 2004 examination is necessary for the protection of its members' interests, the court must still balance the examiner's interest against the debtor's interest and that of the estate. *See In re Countrywide Home Loans, Inc.*, 384 B.R. 373, 393 (W.D. Pa. 2008) (applying a "sliding scale" manner or balancing test to determine whether a line of inquiry is appropriate under Rule 2004); *Drexel Burnham*, 123 B.R. at 712.

### (i)    The Committee Does Not Have a Legitimate Interest that Justifies Conducting a Broad Sweeping Examination of the Debtor at this Time

12.    The Committee cannot satisfy the "good cause" test for the requested examination because such a broad examination is not necessary to represent the interests of its members in this case. Assuming the proofs of claim filed by two out of the three members were executed and filed accordance with the Bankruptcy Code, the claims represent prima facie evidence of the validity and amount of the claim. *See* Fed. R. Bankr. P. 3001(f). Mere speculation of a potential claim objection or other potential Debtor actions in the future goes well beyond the scope of inquires allowed under Rule 2004. *See Texaco Inc.*, 79 B.R. at 555 (Court did not require examinee to produce documents relating to the development, preparation or content of restructuring the debtor's operations or a plan of reorganization as premature). Even if the Committee did have a legitimate interest in conducting a broad examination of the Debtor related to its members' claims, much of the information and/or documentation that it requests is not relevant to that interest. The Committee requests a Rule 2004 examination relating to, among other things, (a) causes of action of the Debtor, (b) documents related debtor's plan, (c) documents regarding any sale, financing, potential recapitalization, debt issuance, rights offering and/or equity infusion; (d) agreements or plans for the acquisition or disposition of assets

involving the Debtor, its affiliates or any subsidiaries;  and (e) documents and communications concerning, relating to or constituting any terms sheets, letters of intent, expressions of interest, and sale agreements concerning the sale of any of the assets of the Debtor, its affiliates or its subsidiaries. Each of these requests relate to the Debtor's reorganization strategy and/or how the Debtor intends to emerge from chapter 11. Additionally, most of the 52 document requests include requests from Debtor's affiliates, the cases to which the Official Committee has not been appointed, an issue the Committee seemingly acknowledges in its Motion to Compel Production of Documents (Doc. No. 144, pg. 7, ¶18).

### (ii) Balancing of Interests Weighs in Favor of Sustaining Debtor's Objection and Denying the Rule 2004 Request

13.    Even assuming that the Committee could demonstrate good cause for a Rule 2004 examination of any scope, the balance of interests of the parties clearly weighs in favor of sustaining Debtor's objection. *See Countrywide*, 384 B.R. at 393 (finding that Rule 2004 requests that seek far-reaching information require a "higher showing of good cause because they are inherently more intrusive and present greater potential for abuse"). Even if a party in interest can show that a Rule 2004 examination is necessary for the protection of the examiner's legitimate interests, the court should only allow a Rule 2004 examination after it balances the examiner's interest against the debtor's interest. *See Drexel Burnham*, 123 B.R. at 712. Prior to the filing of the Notice, Debtor had already provided a number of documents to counsel for the Committee. Further, on November 24, 2015, the Committee's Financial Advisor from GlassRatner visited the Debtor's offices for the purpose of downloading additional financial information for review. An additional production beyond what has already been produced or specifically downloaded by the Committee's financial advisor is not merely unnecessary, but is intended only to harass and distract the Debtor. *See Texaco Inc.*, 79 B.R. 553 (finding that 2004

requests from committee members should not encompass requests that are duplicative of previously furnished information).

14.     The costs to the Debtor to provide further compliance with the Notice would be extensive, and the time required for professionals to respond would be extremely disruptive to the Debtor. The questionable relevance of the requested discovery, the prior document production and inspection performed, and the Debtor's interest in avoiding needless costs and expenses outweigh the Committee's interest in moving forward with its document request.

### (iii)     A Number of the Discovery Requests are Privileged and/or Confidential

15.     Even assuming, arguendo, that the Committee had a legitimate interest in conducting such a broad sweeping Rule 2004 examination, Debtor requires protection because a number of the discovery requests are privileged and/or confidential. A Rule 2004 examination is subject to the doctrine of privileged communications, including the attorney-client privilege. The Committee requests the production of documents related to Debtor's causes of action, plans of reorganization, and strategic business plans, each of which would have been created by or with significant input from Debtor's legal counsel. *See Notice* Sections B and E. Therefore, they are subject to the attorney work product doctrine and would not be produced in any event.

### Conclusion

As set forth herein, the Court should deny the Committee's Motion as the Notice seeks information that Debtor has provided, or permitted to be inspected. The Committee has no need for an examination of the numerous topics listed in the Notice. Further, this Court should sustain

Debtor's Objection to the Notice as the proposed broad examination is not necessary to protect

its represented interests and was filed with a clear intent to harass and distract the debtor.

**RESPECTFULLY SUBMITTED** this 9th day of December 2015.

/s/ R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 984469
Latham, Shuker, Eden & Beaudine, LLP
rshuker@lseblaw.com
bknotice@lseblaw.com
111 N. Magnolia Ave., Suite 1400
Orlando, Florida 32801
Telephone: 407-481-5800
Facsimile: 407-481-5801
*Attorneys for Debtors*

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:                                          CASE NO. 6:15-bk-7397-CCJ

**BUNKERS INTERNATIONAL, LLC,**                 CHAPTER 11

Debtor.

_____/                **Jointly-administered**


### CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true copy of the together with any exhibits, **DEBTOR'S RESPONSE IN OPPOSITION TO THE COMMITTEE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS (Doc. No. 144) AND OBJECTION TO THE COMMITTEE'S NOTICE OF RULE 2004 EXAMINATION *DUCES TECUM* (Doc No. 110)** has been furnished either electronically and/or by U.S. First Class, postage prepaid mail to: Bunkers International Corp., Attn:  John Canal, 1071 S Sun Drive, Suite 3, Lake Mary, FL 32746; Moore & Van Allen PLLC, Attn: James R. Langdon, Esq., 100 N Tryon St., 47th Fl, Charlotte, NC 28202; Jules S. Cohen, Esq., Akerman LLP, P.O. Box 231, Orlando, FL 32802-0231; John B. Hutton, Esq., Greenberg Traurig, P.A., 333 S.E. Second Avenue, Suite 4400, Miami, Florida 33131; Mr. Leigh Shaddick, Orion Holdings Limited, 137, 4EB, DAFZA, Dubai, UAE; Steve Gorey, Tropic Oil Company, 9970 N.W. 89th Court, Miami, Florida 33178; Derek Hintz, Sprague Operating Resources, LLC, International Drive, Portsmouth, NH 03801; and the Office of the United States Trustee, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, Florida 32801, this 9th day of December 2015.


                                       /s/ R. Scott Shuker
                                       R. Scott Shuker, Esq.



October 13, 2015

*Via Email*

R. Scott Shuker
Latham, Shuker, Eden & Beaudine, LLP
111 N. Magnolia Ave., Suite 1400
Orlando, FL 32801
*rshukerlseblaw.com*

      Re:    *In re Bunkers International Corp., et al.*, Case No. 6:15-bk-7397; In the United
               States Bankruptcy Court for the Middle District of Florida, Orlando Division

Dear Scott:

      Attached as **Exhibit A** to this letter is a preliminary due diligence list reflecting the initial information we are seeking from the Debtor, *Bunkers International Corp.*, in order to allow the Committee to fully evaluate the business and operations of the Debtor, the potential for recoveries in the chapter 11 case, and any claims and causes of action that may be available to the Committee. In order to facilitate a rolling production and receive some of the information sooner, we have attempted to prioritize some of the information. At the same time, you have mentioned the possibility of a sale of the company in the next few weeks or a prompt liquidation, such that timely receipt of information and documents by the Committee is imperative to the Committee being able to meaningfully evaluate such proposed courses of action.

      We are happy to get on a call to discuss as necessary. In the meantime, we would appreciate receiving the documents and information as soon as possible as it will help us be more responsive to potential plan and/or sale proposals. We will incorporate these requests into a more formal Rule 2004 request, but wanted to get this to you informally first, so as to expedite the process. Thank you.

               Sincerely,

               *John B. Hutton*

               John B. Hutton

JBH/mrf
Enclosure
cc:    Leigh Shaddick *[Chair, Committee] Via Email*
      Ari Newman, Esq. *[Firm] Via Email*

EXHIBIT "A"

## EXHIBIT A

## DETAILED DUE DILIGENCE REQUEST

The following is a preliminary list of documents and information which we would like to review in connection with our due diligence review of Bunkers International Corp. (the "Debtor"). Please note that this is a preliminary list and that we may request additional information as our review progresses. If there are some items included in the list below that do not exist or are not applicable, please advise us accordingly with respect to those items.

**\*\* The documents identified with an asterisk and in bold below are the most critical at this time.**

A.    Material Contracts and Agreements

1.    **\*\*All loan agreements, security agreements and promissory notes entered into by the Debtor, including any documents indicating perfections of such interests, and including any guaranties.**

2.    Any loan, stockholder or repurchase agreements entered into for the benefit of any officer, director, stockholder or employee of the Debtor or its subsidiaries.

3.    All material joint venture and partnership agreements to which the Debtor or any of its subsidiaries are a party.

4.    **\*\*All insurance coverage of the Debtors or any of their subsidiaries or their respective employees, including director and officer liability insurance.**

5.    All material leases pursuant to which the Debtor or any of its subsidiaries have leased equipment or other personal property from or to others, including information as to the lease term, the lessee or lessor, the periodic payments and the amount of equipment leased.

6.    **\*\*All contracts or agreements entered into by the Debtor after January 1, 2014, including without limitation, license agreements, and any drafts, modifications, amendments, riders, written and oral communications and notes related thereto.**

7.    All real property leases.

8.    Information and documentation regarding the Debtors' offshore activities, divisions and subsidiaries (not otherwise provided in response to other requests).

GREENBERG TRAURIG, P.A. • ATTORNEYS AT LAW • WWW.GTLAW.COM

9.      **All documents relating to the tax free company the principals of the Debtor established in Dubai in 2015, Bunkers International Trading and Supply DMCC, and all bank statements relating to such company.**

10.     All material agreements of the Debtor and its subsidiaries with suppliers.

11.     All documents and communications concerning, related to or evidencing any intercompany Claims, including any analysis thereof and notes related thereto.

B.      Bankruptcy/Valuation Information

1.      All documents and communications concerning or relating to the formulation of any plan of reorganization or liquidation or related disclosure statement which the Debtor has or is considering including any terms sheets, agreements, exit proposals, exit financing proposals, rights offerings, plan support agreements, plan exhibits, and drafts.

2.      **All documents and communications since January 1, 2014 concerning the financial condition of the Debtors including, but not limited to, all financial statements, balance sheets, income statements, profit and loss statements, business plans, financial projections, estimates or budgets, and all studies, reports and evaluations concerning working capital, liquidity, solvency or considerations of bankruptcy. This would include post-petition financial statements, budget to actual reconciliations, reports regarding the collection of receivables, and any financial information reported to PNC.**

3.      **All documents and communications after January 1, 2014, concerning, relating to or constituting any appraisals, fairness opinions, or non-consolidation opinions regarding any of the Debtors or their subsidiaries or their respective assets.**

4.      **All documents and communications after January 1, 2014, concerning or related to any valuation of the Debtor and/or its subsidiaries and/or any of their respective assets, including any drafts, work papers, models, and forecasts.**

5.      **All documents and communications after January 1, 2014, by and among the Debtor and its professionals, or between the Debtor and any third parties, concerning or related to any sale, potential recapitalization, loan, debt issuance, rights offering and/or equity infusion with respect to the Debtor or its subsidiaries.**

6.      **All documents and communications after January 1, 2014, concerning or related to the Debtor's foreign operations (including foreign branch offices and foreign subsidiaries), including without limitation, any business plans, flow of funds to/from foreign branch offices and foreign subsidiaries, repatriations from foreign subsidiaries to the Debtor and issues associated therewith, financial statements, financial projections, estimates or budgets, studies, marketing material, reports, evaluations, agreements, and notes related thereto.**

GREENBERG TRAURIG, P.A. ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM

C.    Acquisitions and Dispositions

    1.    Documents regarding any material acquisitions or divestures of the Debtor or its subsidiaries within the 2 years prior to the Petition Date.

    2.    Agreements or plans for the acquisition or disposition of assets involving the Debtor or any of its subsidiaries.

    3.    **Schedule of all sale or financing proposals under review currently by the Debtors or its subsidiaries, and copies of any drafts pertaining thereto.

    4.    **All documents and communications from and after January 1, 2014, concerning, relating to or constituting any term sheets, letters of intent, expressions of interest, and sale agreements concerning the sale of any of the Debtors' assets, including any marketing proposals, memoranda, teasers, confidentiality agreements, lists of parties contacted, agreements, drafts, modifications, amendments, riders, and notes related thereto.

D.    Corporate Documents

    1.    Certificate of Incorporation and By-laws or similar constituent documents of the Debtors and their subsidiaries with all amendments to date.

    2.    **Minute Books of Stockholders, the Board of Directors and any and all committees of the Board of Directors of the Debtors and their subsidiaries since January 1, 2014.

    3.    A schedule indicating all jurisdictions in which the Debtor and its subsidiaries are qualified to do business as foreign corporations.

    4.    **Disclosure documents and related memoranda or proposals used by the Debtor or its subsidiaries in financings, institutional and bank loan applications, or attempted sales of securities of the Debtors or its subsidiaries since January 1, 2014.

E.    Litigation

    1.    A schedule of all pending or threatened litigation, grievances, arbitrations, claims or settlements involving the Debtor or any of its subsidiaries, whether as plaintiff or defendant.

    2.    All management representation letters to, and reports and management letters from, the independent public accountants of the Debtor or any of its subsidiaries concerning the Debtor or any of its subsidiaries covering the three most recent fiscal years and the current fiscal year.

GREENBERG TRAURIG, P.A. ▪ ATTORNEYS AT LAW ▪ WWW.GTLAW.COM

3.      Copies of all counsel's letters to the independent public accountants of the Debtors or any of their subsidiaries with respect to litigation, contingent liabilities and other matters covering the three most recent fiscal years and the current fiscal year.

4.      All documents and communications concerning or related to any Claims and/or causes of action the Debtor has or may have, including without limitation, commercial tort claims, and any analyses and notes related thereto.

5.      All documents and communications concerning or related to any Transfers (as defined in 11 U.S.C. § 101(54)) made by the Debtor to or for the benefit of any Insider (as defined in 11 U.S.C. § 101(31)) of the Debtor from and after August 28, 2011 through the present, including but not limited to, any cash payments.

6.      From and after August 28, 2011, all documents and communications concerning, related to or evidencing any causes of action the Debtor's estate (or any party granted standing) may have under chapter 5 of the Bankruptcy Code, including any analysis thereof and notes related thereto.

F.      <u>Employee and Labor Matters</u>

1.      All employment contracts, confidentiality agreements, and non-competition agreements, including a written description of any oral contract or agreement, to which the Debtors or any of their subsidiaries is a party or pursuant to which any of the parties is liable.

2.      All documents and communications concerning or related to any employee bonus plans or similar arrangements, including payments made thereunder from and after January 1, 2014, and employee benefit plans, including medical reimbursement plans, death benefit plans, etc.

G.      <u>Management</u>

1.      **A copy of the most current management organizational chart for the Debtor and its subsidiaries.**

2.      Copies of management bonus plans or arrangements, compensation arrangements, medical reimbursement plans, death benefit plans, etc.

3.      Loans to officers, directors and key employees.

4.      Copies of existing or proposed employment agreements with management, including severance agreements.

H.      <u>Tax Matters</u>

GREENBERG TRAURIG, P.A. ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM

1.      **All federal and state income tax deficiency notices, audit and settlement proposals.**

I.   Environmental Documents

1.      Notices to and from environmental regulatory authorities, including notices of violation, regarding activities of the Debtor or any of its subsidiaries.

2.      Audit and inspection reports of the Debtor or any of its subsidiaries, whether performed by the Debtor or any of their subsidiaries or by third parties.

3.      Insurance policies and related analyses or memoranda of the Debtor or any of its subsidiaries.

J.   Audit Reports and Related Information

1.      **Internal memoranda (particularly internal audit memoranda) concerning problem areas.**

2.      **Auditors' reports to management and management's response for the last three years.**

3.      Reports of outside consultants, analysts or others concerning the Debtor.

K.   Government Regulation of Business Activities

1.      **Reports resulting from inspections, audits or studies of operations of the Debtor or its subsidiaries conducted during the past three years by the following (U.S. and other):**

      (a)      **Federal Trade Commission;**

      (b)      **Federal Communications Commission;**

      (c)      **Environmental Protection Agency;**

      (d)      **Department of Labor;**

      (e)      **Internal Revenue Service; or**

      (f)      **Any other federal, state, or foreign regulatory and taxing authorities.**

2.      Correspondence during the past three years between the Debtor or any of its subsidiaries and any of the regulatory authorities listed in items 1(a)-(f) above.

GREENBERG TRAURIG, P.A. ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM

3.    **\*\*List of all licenses and permits issued to the Debtor or any of its subsidiaries by any of the regulatory agencies listed in items 1(a)-(f) above.**

4.    All other regulatory information involving the Debtor or any of its subsidiaries, whether foreign or domestic, not otherwise covered by the foregoing.

*MIA 184908295v2*

GREENBERG TRAURIG, P.A. ■ ATTORNEYS AT LAW ■ WWW.GTLAW.COM

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In re                                  Case No. 6:15-bk-07397-CCJ
                                           Chapter 11

BUNKERS INTERNATIONAL CORP., *et al.*,

                                     (Jointly Administered[1])

      Debtors.

_____/

## NOTICE OF RULE 2004 EXAMINATION *DUCES TECUM* TO DEBTOR, BUNKERS INTERNATIONAL CORP. WITHOUT EXAMINATION

To:     **Bunkers International Corp.**
         c/o R. Scott Shuker, Esq.
         Latham, Shuker, Eden & Beaudine, LLP
         111 N. Magnolia Ave., Suite 1400
         Orlando, FL 32801
         T: 407-481-5800
         F: 407-481-5801
         E: rshuker@lseblaw.com

PLEASE TAKE NOTICE that the Official Committee of Unsecured Creditors (the "**Committee**"), by its undersigned counsel, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedures and Local Bankruptcy Rule 2004-1, requests that the Debtor, Bunkers International Corp. (the "**Debtor**"), produce for inspection and copying, by no later than November 13, 2015, all of the documents described on the attached **Exhibit A**. Such production shall be made at the offices of Greenberg Traurig, P.A., attention: John B. Hutton, 333 S.E. 2nd Avenue, Suite 4400, Miami, FL 33131, or alternatively, copies of the requested documents may be mailed or e-mailed to Greenberg Traurig, P.A., attention: John B. Hutton, 333 S.E. 2nd Avenue, Suite 4400, Miami, FL 33131, email: huttonj@gtlaw.com.

---

[1] Jointly administered cases: Bunkers International, LLC, Case No. 6:15-bk-07397-CCJ; Americas Bunkering, LLC, Case No. 6:15-bk-07400-CCJ; Atlantic Gulf Bunkering, LLC, Case No. 6:15-bk-07402-CCJ; and Dolphin Marine Fuels, LLC, Case No. 6:15-bk-07404-CCJ

**EXHIBIT "B"**

GREENBERG TRAURIG, P.A.
333 S.E. 2nd Avenue
Suite 4400
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
*Proposed Counsel for The Official*
*Committee of Unsecured Creditors*

By: /s/ John B. Hutton
   John B. Hutton
   Florida Bar No. 902160
   Email: huttonj@gtlaw.com
   Ari Newman
   Florida Bar No. 056575
   Email: newmanar@gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel of record or *pro se* parties who are authorized to receive electronically Notices of Electronic Filing in this bankruptcy case, or by first class U.S. mail, postage prepaid, for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


                              /s/ John B. Hutton
                              John B. Hutton

**Notice will be electronically mailed to:**

Adam L Alpert aalpert@bushross.com, bnkecf@bushross.com;ebishop@bushross.com

Jules S Cohen jules.cohen@akerman.com

Elena L Escamilla elena.l.escamilla@usdoj.gov

David L Gay dgay@bergersingerman.com, efile@bergersingerman.com;
efile@ecf.inforuptcy.com

Geremy W Gregory ggregory@balch.com, edegennaro@balch.com

John B Hutton huttonj@gtlaw.com, MiaLitDock@gtlaw.com;miaecfbky@gtlaw.com

Jayna Partain Lamar jlamar@maynardcooper.com, jturnipseed@maynardcooper.com

Ari Newman newmanar@gtlaw.com, miaecfbky@gtlaw.com;crossmann@gtlaw.com

Bradley M Saxton bsaxton@whww.com, scolgan@whww.com;arox@whww.com

Gregory L Scott gscott@nasonyeager.com, sjanowitz@nasonyeager.com

R Scott Shuker bknotice@lseblaw.com, rshuker@lseblaw.com;jocasio@lseblaw.com

J. Stephen Simms jssimms@simmsshowers.com

Paul Steven Singerman singerman@bergersingerman.com, efile@bergersingerman.com;
mdiaz@bergersingerman.com;efile@ecf.inforuptcy.com

United States Trustee - ORL
USTP.Region21.OR.ECF@usdoj.gov

Michelle Otero Valdes mov@chaloslaw.com

Mark J. Wolfson mwolfson@foley.com, jhayes@foley.com;crowell@foley.com

Andrew D Zaron azaron@leoncosgrove.com, pcaruso@leoncosgrove.com; mchapoteau@leoncosgrove.com

## EXHIBIT "A"
### Definitions

1.     "Communication" includes every manner of transmitting or receiving facts, Information, opinions, or thoughts (including, but not limited to: visually; orally; in writing; by digital, analog, electronic, magnetic, telephonic, or other mechanical means; or otherwise).

2.     "Concerning," "concern," or any other derivative thereof, as used herein shall be construed as referring to, responding to, Relating to, pertaining to, connected with, comprising, memorializing, commenting on, regarding, discussing, showing, describing, reflecting, analyzing or constituting.

3.     "Contract" shall mean (a) an agreement, oral or written, between two or more Persons which creates an obligation to do or not to do a particular thing, and (b) any Document which serves as proof of the obligation.

4.     "Debtor," "You" or "Your" means Bunkers International Corp., and includes any employees, agents, associates, predecessors, successors, assigns, affiliates, subsidiaries or entities acting on behalf or under control of You.

5.     "Document" means the original or a copy of any tangible thing from or on which Information can be stored, recorded, processed, transmitted, inscribed, or memorialized in any way by any means, regardless of technology or form and including, but not being limited to: accounting books or records; accounts; account statements; affidavits; agendas; agreements; analyses; applications; appointment books; appraisals; audio tapes; balance sheets; bordereaux; books; books or records of account; brochures; cables; calendars; catalogues; CD-ROMs; certificates; charts; circulars; compact discs; computer printouts; contracts; correspondence; data processing input and output; deeds; deposition transcripts; desk calendars; diaries; digital images; drafts; DVDs; DVD-ROMs; electrical recordings; electronically stored Information, e-mail Communications; evaluations; Excel spreadsheets; experiments; faxes; facsimiles; films; financial statements; floppy disks; guides; guidelines; hard copies of electronic, electrical, magnetic or any other Communications not made on paper; hard disk drives; hearing transcripts; income statements; instant messages; interoffice Communications; journals; ledgers; letters; lists; logs; magazines; magazine articles; magnetic recordings; magnetic tapes; manuals; memoranda; microfilms; minutes; newspapers; newspaper articles; notations; notebooks; notes; objects; opinions; papers; photographs; policies; PowerPoint presentations; procedures; profit and loss statements; prospectuses; receipts; recordings; releases; reports; schedules; signature cards; sound recordings; spreadsheets; statements; statements of cash flow; statistical records; stock certificates; summaries of accounts; summaries; tables; tabulations; tangible things; telecommunications; telegrams; telefaxes; telex messages; tests; text messages; titles; transcripts; videos; videotapes; websites; work papers; and any other writings, be they typewritten, handwritten, printed, stored in or on any form of electronic or magnetic media, or otherwise, and other records, recordings or pictures of any kind or description. Each copy of a Document which contains any separate notations or writings thereon shall be deemed to be a separate Document for purposes of these requests. Any Document identified will include any Document, in draft or final form, either sent or received by You. This term also includes any Documents now or ever in Your possession, custody or control, or available to You, Your attorneys, accountants, agents,

representatives, employees, or associates, and specifically includes Documents kept by individuals in their desks, at home, or elsewhere.

6.      "Information" shall be expansively construed and shall include, but not be limited to facts, data, opinions, images, impressions, concepts and formulae.

7.      "Person" means any natural person, firm, partnership, joint venture, corporation, or group of natural persons or such entities.

8.      "Relating to" means, directly or indirectly, refer to, mention, describe, pertain to, arise out of or in connection with or in any way legally, logically, or factually connected with the matter discussed.

9.      When referring to a Person, the term "Identify" shall mean to give, to the extent known, the Person's full name, present or last known address, present or last known telephone number, present or last known e-mail address, and when referring to a natural Person, additionally, the present or last known place of employment. Once a Person has been identified in accordance with this paragraph, only the name of that Person need be listed in response to subsequent discovery requesting the identification of that Person.

10.      When referring to a Document, the term "Identify" shall mean to state the type of Document as defined herein, the subject matter thereof, the date thereof, by whom it was written or prepared, by whom it was signed, to whom it was sent, the present location (name and address of place) thereof, and the present custodian of the original or copies thereof, so that the Document is described in sufficient enough detail that it could be subject to a request for production of Documents under the applicable rules of civil procedure. If any such Document was, but no longer is, in Your possession or subject to Your control, state the disposition of the Document.

11.      When referring to a Communication other than a Document, the term "Identify" shall mean to describe the Communication in such a manner that all the following Information is provided:

        (a)      Whether the Communication took place in Person, by telephone, via e-mail, or otherwise;

        (b)      If by telephone, the identity of the Person originating the call, the identity of the Person receiving the call, the identity of all other Persons participating in the Communication, and the location of each of the those Persons at the time of the Communication; and the identity of all other Persons present within hearing of any party to the Communication;

        (c)      If by e-mail, the identity, including name and e-mail address, of the Person originating the e-mail; the identity or identities, including name and e-mail address, of all recipients, both intended and unintended, and including Persons to whom blind copies were sent, of the e-mail Communication; the date and time of the Communication; all replies to and forwards of the original Communication; the subject of the e-mail

6

Communication; and the identity and physical location of the computer, network, or server from which the e-mail was sent;

       (d)     If in Person, the identity of all Persons present during the Communication and the location of the Communication;

       (e)     The date and time of the Communication;

       (f)     To the best of Your recollection, what was said by each party to the Communication; and

       (g)     The identity of the custodian of any Document that recorded, summarized, or Concerned the Communication.

12.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this discovery request all responses that might otherwise be construed to be outside of its scope.

13.     The words "any," "all" and "each" shall be construed as necessary to bring within the scope of this discovery request all responses that might otherwise be construed to be outside of its scope.

14.     The use of the singular form of any word includes the plural and vice versa.

15.     The use of the masculine form of any word includes the feminine form and the neuter form, and vice versa.

### Instructions

1.     In responding to this Document request, furnish all Information which is available to You, including Information in the possession of Your agents, representatives, employees, investigators, attorneys, or anyone acting on their behalf or on Your behalf, and not merely such Information known of Your own knowledge. If You are unable to locate any requested Document after exercising due diligence to secure the requested Document, so state.

2.     This Document request is continuing so as to require supplementary Documents if additional Information or Documents hereafter are obtained or discovered which may augment or otherwise modify the Information that You provide and Documents that You produce. Supplementary Documents are to be served within 10 days after receipt or discovery of such Information or Documents.

3.     If any Document is not produced under a claim of privilege, for each such Document Identify the nature of the privilege (including work product) that is being claimed, indicate the Document request to which the Document is responsive, and provide the following Information, unless divulgence of such Information would cause disclosure of the allegedly privileged Information: (1) the type of Document; (2) the general subject matter of the Document; (3) the date of the Document; and (4) such other Information as is sufficient to Identify the Document for a subpoena *duces tecum*, including, where appropriate, the author of

the Document, the addressee of the Document, and, where not apparent, the relationship of the author and the addressee to each other.

4.      In the event that any Document called for has been destroyed, discarded, or otherwise disposed of, Identify the Document by stating its: (a) author or preparer; (b) addressee(s); (c) indicated or blind copies; (d) date; (e) subject matter; (f) number of pages; (g) attachments or appendices; (h) all Persons to whom it was distributed or shown; (i) date of destruction or other disposition; (j) manner of destruction or other disposition; (k) reason for destruction or other disposition; (*l*) Person destroying or disposing of the Document; and (m) the Document request or requests to which the Document is responsive.

5.      All Documents are to be produced as they are kept in the usual course of business with any identifying labels, file markings or similar identifying features or shall be organized and labeled to correspond to the appropriate request herein.

## REQUESTED DOCUMENTS

A.    <u>Material Contracts and Agreements</u>

1.      All loan agreements, security agreements and promissory notes entered into by the Debtor (other than the PNC loan documents, to the extent such documents have been previously provided by PNC).

2.      All guaranty agreements executed in connection with any loan transaction involving the Debtor.

3.      All documents relating to any security interest or lien against any vessel owned by the Debtor or any affiliate, including confirmation that any security interest is recorded by a preferred ship mortgage in the U.S. Coast Guard Vessel Documentation Center.

4.      Any loan, stockholder or repurchase agreements entered into for the benefit of any officer, director, stockholder or employee of the Debtor or its subsidiaries.

5.      All insurance policies covering the Debtor or any of its affiliates, subsidiaries or their respective employees, including any director and officer liability insurance or its equivalent.

6.      All Documents and Communications concerning, related to or evidencing any intercompany Claims, including any analysis thereof and notes related thereto.

7.      All material joint venture and partnership agreements to which the Debtor or any of their subsidiaries are a party, which were executed or in effect during the time period from January 1, 2015 to the present.

8.    All contracts or agreements entered into by the Debtor after January 1, 2012, including without limitation, license agreements, and any drafts, modifications, amendments, riders, written and oral communications and notes related thereto.

9.    Information and documentation regarding the Debtor's offshore activities, divisions, affiliates and subsidiaries (not otherwise provided in response to other requests).

10.    All material leases pursuant to which the Debtor or any of its affiliates or subsidiaries have leased equipment or other personal property from or to others, including information as to the lease term, the lessee or lessor, the periodic payments and the amount of equipment leased.

11.    All material agreements of the Debtor, its affiliates and its subsidiaries with suppliers.

12.    Any hedging agreements (e.g., forward contracts or swaps) in place.

B.    Bankruptcy/Valuation Information

1.    All Documents and Communications concerning or relating to the formulation of any plan of reorganization or liquidation or any related disclosure statement, which the Debtor has or is considering including any terms sheets, agreements, exit proposals, exit financing proposals, rights offerings, plan support agreements, plan exhibits, and drafts.

2.    All Documents and Communications concerning or relating to the formulation of any sale of the Debtor's assets under 11 U.S.C. § 363, which the Debtor has or is considering including any terms sheets, agreements and drafts.

3.    All Documents and Communications from January 1, 2011 through the present concerning the financial condition of the Debtors including, but not limited to, all financial statements, business plan, financial projections, estimates or budgets, and all studies, reports and evaluations concerning working capital, liquidity, solvency or considerations of bankruptcy.

4.    All Documents and Communications from January 1, 2011 through the present concerning, relating to or constituting any appraisals, fairness opinions, or non-consolidation opinions regarding the Debtor, its affiliates or subsidiaries or their respective assets.

5.    All Documents and Communications from January 1, 2011 through the present concerning or related to any valuation of the Debtor and/or its affiliates and subsidiaries and/or any of their respective assets, including any drafts, work papers, models, and forecasts.

6.     All Documents and Communications from January 1, 2015 through the present, by and among the Debtor and any third parties concerning or related to any sale, financing, potential recapitalization, debt issuance, rights offering and/or equity infusion with respect to the Debtor, its affiliates or its subsidiaries.

7.     All Documents and Communications from January 1, 2011 through the present, concerning or related to the Debtor's foreign operations (including foreign branch offices and foreign subsidiaries), including without limitation, any business plans, flow of funds to/from foreign branch offices and foreign subsidiaries, repatriations from foreign subsidiaries to the Debtor and issues associated therewith, financial statements, financial projections, estimates or budgets, studies, marketing material, reports, evaluations, agreements, and notes related thereto.

C.     Acquisitions and Dispositions

1.     Documents regarding any material acquisitions or divestures of the Debtor, its affiliates or its subsidiaries within the 4 years prior to the Petition Date.

2.     Agreements or plans for the acquisition or disposition of assets involving the Debtor, its affiliates or any of its subsidiaries.

3.     All Documents and Communications from January 1, 2011, through the present concerning, relating to or constituting any term sheets, letters of intent, expressions of interest, and sale agreements concerning the sale of any of the assets of the Debtor, its affiliates or its subsidiaries, including any marketing proposals, memoranda, teasers, confidentiality agreements, lists of parties contacted, agreements, drafts, modifications, amendments, riders, and notes related thereto.

D.     Corporate Documents

1.     Certificate of Incorporation and By-laws or similar constituent documents of the Debtor, its affiliates and its subsidiaries with all amendments to date.

2.     Minute Books of Stockholders, the Board of Directors and any and all committees of the Board of Directors of the Debtor, its affiliate and subsidiaries from January 1, 2011 though the present.

3.     A corporate organizational chart reflecting the ownership chain of the Debtor, its affiliates and subsidiaries as of each of the following dates: Jan. 1, 2011, Jan. 1, 2012, Jan. 1, 2013, Jan. 1, 2014, Jan. 1, 2015 and the petition date.

4.    A schedule indicating all jurisdictions in which the Debtor, its affiliates and subsidiaries are qualified to do business as foreign corporations.

5.    Disclosure Documents and related memoranda or proposals used by the Debtor or its subsidiaries in private placements, bond financings, institutional and bank loan applications, or attempted sales of securities of the Debtor, its affiliates or its subsidiaries since January 1, 2011.

E.    Litigation

1.    All management representation letters to, and reports and management letters from, the independent public accountants of the Debtor or any of its subsidiaries concerning the Debtor or any of its subsidiaries covering the three most recent fiscal years and the current fiscal year.

2.    Copies of all counsel's letters to the independent public accountants of the , its affiliates or any of its subsidiaries with respect to litigation, contingent liabilities and other matters covering the three most recent fiscal years and the current fiscal year.

3.    All Documents and Communications concerning or related to any claims and/or causes of action the Debtor have or may have, including without limitation, commercial tort claims, and any analyses and notes related thereto.

4.    All Documents and Communications concerning or related to any Transfers (as defined in 11 U.S.C. § 101(54)) made by the Debtor to or for the benefit of any Insider (as defined in 11 U.S.C. § 101(31)) of the Debtor from and after August 28, 2011 through the present, including but not limited to, any cash payments.

5.    From and after August 28, 2011, all Documents and Communications concerning, related to or evidencing any causes of action the Debtor's estate (or any party granted standing) may have under chapter 5 of the Bankruptcy Code, including any analysis thereof and notes related thereto.

6.    All Documents relating to any pending or threatened legal actions—for example, pursuant to a ship arrest--initiated by Debtor against shippers for non-payment of their bunker bill.

7.    All Documents relating to any pending interpleader actions involving issues as to who the ship-owner should pay for bunker fuel—the Debtor bunker or actual supplier.

F.    Employee and Labor Matters

1.    All employment contracts, confidentiality agreements, and non-competition agreements, including a written description of any oral contract or agreement, to which the Debtors or any of their subsidiaries is a party or pursuant to which any of the parties is liable.

2.    All Documents and Communications concerning or related to any employee bonus plans or similar arrangements, including payments made thereunder from and after January 1, 2011, and employee benefit plans, including medical reimbursement plans, death benefit plans, etc.

G.    Management

1.    A copy of the most current management organizational chart for the Debtor, its affiliates and its subsidiaries.

2.    Copies of management bonus plans or arrangements, compensation arrangements, medical reimbursement plans, death benefit plans, etc., including, without limitation, the plans or arrangements for John Canal, Maria Canal and Alfred Canal.

3.    Copies of all Documents and Communications evidencing any loans to officers, directors, managers, indirect equity holders and key employees.

4.    Copies of existing or proposed employment agreements with management, including severance agreements.

H.    Tax Matters

1.    All federal and state income tax deficiency notices, audit and settlement proposals relating to the Debtor, its affiliates or its subsidiaries.

2.    All federal and state income tax returns for the year 2011 through the present relating to the Debtor, its affiliates or its subsidiaries.

3.    All foreign income tax returns for the year 2011 through the present relating to the Debtor, its affiliates or its subsidiaries.

I.    Audit Reports and Related Information

1.    Internal memoranda (particularly internal audit memoranda) concerning problem areas of the Debtor, its affiliate or its subsidiaries.

12

2.      Auditors' reports to management and management's response for the last four years of the Debtor, its affiliate or its subsidiaries.

3.      Reports of outside consultants, analysts or others concerning the Debtor, its affiliates or subsidiaries, made or delivered during the last four years.

J.      Financial Information

1.      Monthly and Annual Income Statements and Balance Sheets of the Debtor or any of its affiliates or subsidiaries for January 2011 through to September 2015. (Excel format if possible).

2.      Bank Statements for all accounts held by the Debtor or any of its affiliates or subsidiaries from July 2011 to August 2015.

3.      Detailed General ledgers for 2011, 2012, 2013, 2014 and YTD 2015 for the Debtor or any of its affiliates or subsidiaries. (Excel format if possible)

4.      Detailed Accounts payable aging reports for the Debtor or any of its affiliates or subsidiaries for year end 2011, 2012, 2013, 2014 and June 2015.

5.      Accounts receivable aging reports for the Debtor or any of its affiliates or subsidiaries for year end 2011, 2012, 2013, 2014 and June 2015.

6.      Transaction Registers for the Debtor or any of its affiliates or subsidiaries for 2011, 2012, 2013, 2014 and YTD 2015.

*MIA 184913269v6*

List of Documents sent to Bunkers Creditor Committee

All Documents sent include periods from 1/1/15 through 8/28/15, as applicable unless noted otherwise. The majority of the bank statements and many of the accounting reports were downloaded live, in real-time with the auditor observing on a second monitor.  All information was provided in Excel unless the associated data system was incapable of producing an excel version, then a searchable PDF was provided.  All documents requested by committee as of 12/8/15 and approved by counsel have been provided to the best of our knowledge.

1. Bunkers Financials in Excel  by month
2. Bunkers AR  reports for each month
3. Bunkers AP reports for each month
4. PNC Loan Documents
5. PNC Default Letter
6. PNC forbearance agreements
7. Australian agreement documents
8. Listing of all bank accounts, including account numbers
9. Bank Accounts in Excel, provided as technically able
10. All paper Wells Fargo Bank Statements
11. All paper PNC Bank Statements
12. All paper US Bank Statements
13. All paper Garanti Bank Statements
14. All paper ING Bank Statements
15. Bunkers Detailed General Ledger Trial Balance
16. All Weekly Borrowing Base Reports
17. Atlantic Gulf Bunkers Inventory Reports
18. Dolphin Marine Fuels Inventory Reports
19. Check Registers 5/28/15 to 8/28/15

**EXHIBIT "C"**