**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

In re:                                                    CASE NO. 6:15-bk-7397-CCJ

BUNKERS INTERNATIONAL CORP.,          CHAPTER 11
*ET AL.*,

                                                          Jointly-administered[1]

                              Debtors.
_____/


**JOINT PLAN OF LIQUIDATION SUBMITTED BY**
**BUNKERS INTERNATIONAL CORP.,**
**ATLANTIC GULF BUNKERING, LLC, and**
**DOLPHIN MARINE FUELS, LLC**


COUNSEL FOR DEBTORS

R. SCOTT SHUKER, ESQ.
MARIANE DORRIS, ESQ.
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
111 N. MAGNOLIA AVENUE, SUITE 1400
ORLANDO, FLORIDA, 32801


December 23, 2015

---

[1]        Jointly-administered cases:  Bunkers International Corp., Case 6:15-bk-7397-CCJ; Americas Bunkering, LLC, Case 6:15-bk-7400-CCJ; Atlantic Gulf Bunkering, LLC, Case 6:15-bk-7402-CCJ; Dolphin Marine Fuels, LLC, Case 6:15-bk-7404-CCJ

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| **In re:** | **CHAPTER 11** |
| **BUNKERS INTERNATIONAL CORP,** *ET AL.*, | **CASE NO.: 6:15-bk-7397-CCJ** |
| **Debtors.** _____/ | **Jointly-Administered** |

**JOINT PLAN OF LIQUIDATION SUBMITTED BY**
**BUNKERS INTERNATIONAL CORP., ET AL.**

**BUNKERS INTERNATIONAL CORP**. ("BIC"), and its affiliated and related entities **ATLANTIC GULF BUNKERING, LLC** ("AGB"), and **DOLPHIN MARINE FUELS, LLC** ("DMF"), (collectively, hereinafter referred to as the "Debtors"), hereby propose the following joint plan of liquidation ("Plan"), pursuant to Chapter 11 of the Code, 11 U.S.C. §101, *et seq*.

**ARTICLE I. - DEFINITIONS**.

For the purpose of the Plan, the following terms will have the meanings set forth below:

**Administrative Claim** shall mean a Claim for payment of an administrative expense of a kind specified in §503(b) of the Code, and of a kind referred to in §507(a)(1) of the Code, including, without limitation, the actual, necessary costs and expenses incurred after the commencement of the Chapter 11 Cases of preserving Debtors' estates and operating the businesses of Debtors, including, wages, salaries, or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Code, and all fees and charges assessed against the Estates under Chapter 123 of Title 28, United States Code.

**Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

**AGB** shall mean Atlantic Gulf Bunkering, LLC, as debtor-in-possession.

**AGB Liquidating Debtor** shall mean AGB, upon entry of the Confirmation Order.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Claim** shall mean a Claim (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of §501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed pursuant to §1111(a) of the Code by virtue of such Claim having been scheduled in the list of Creditors prepared and filed by Debtors with the Bankruptcy Court pursuant to §521(1) and Rule 1007(b) and not listed as disputed, contingent or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed by Debtors or the Committee, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding, a Claim may be temporarily allowed for

2

voting purposes pursuant to the provisions of Rule 3018(a).  Unless otherwise specified in the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise or arising subsequent to the Petition Date.

**Allowed Interest** shall mean an Interest (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; or (b) scheduled in the list of equity security holders prepared and filed by Debtors with the Bankruptcy Court pursuant to Rule 1007(b); and in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Order of the Bankruptcy Court.

**Allowed Priority Tax Claim** shall mean a Priority Claim pursuant Code section 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under Section 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes as Allowed Claim.

**Ballot** shall mean the form(s) distributed to each Creditor holding a Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

**Bankruptcy Cases** shall mean the bankruptcy cases of the Debtors, each of which are pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Code.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which Debtors' Chapter 11 Cases are pending, and any Bankruptcy Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

**Bankruptcy Estates** shall mean the estates created pursuant to §541 of the Code by the commencement of Debtors' Chapter 11 cases and shall include all property of the Estates as defined in such Section.

**Bar Date** shall mean the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in these Cases.

**BIC** shall mean Bunkers International Corp., as debtor-in-possession.

**BIC Liquidating Debtor** shall mean BIC after entry of the Confirmation Order.

**Business Day** shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in Orlando, Florida, are required or authorized to close.

**Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits or other similar items.

**Causes of Action** shall mean any and all Claims, causes of actions, cross-claims, counterclaims, third-party claims, indemnity claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guaranties, suits, obligations, liabilities, accounts, offsets, recoupments, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or noncontingent, matured or unmatured, suspected, disputed or undisputed, forseen or unforseen, direct or indirect, choate or inchoate,

4

whether arising before, on or after the Petition Date, including through the Effective Date, in contract, in admiralty, in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, the term "Causes of Action" shall include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law or in equity; (b) the right to object to Claims; (c) all claims pursuant to section 362 or Chapter 5 of the Bankruptcy Code; (d) the claims and defenses of fraud, mistake, duress, and usury and any other defenses set forth in Section 558 of the Bankruptcy Code; (e) any state law fraudulent transfer claims; (f) any claims arising under the Maritime Lien Act or other maritime law of the U.S. or another jurisdiction; (g) any claims asserted by any of the Debtors in one or more proceedings in the Bankruptcy Court or in another court of competent jurisdiction; (h) all commercial tort claims; and (i) all rights under any insurance policy including directors and officers' insurance and errors and omissions coverage.

**Claim** shall mean any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Class** shall mean any Class into which Claims or Interests are classified pursuant to the Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.*, shall mean the specific Class into which Claims or Interest are classified pursuant to Articles II, III and IV of the Plan.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. §101, *et seq.*, and any amendments thereof.

5

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to §1129 of the Code.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Code, and which is in form and content acceptable to the Debtors.

**Creditor** shall have the same meaning as set forth in §101(1) of the Code.

**Creditors' Committee or Committee** shall mean the Official Committee of Unsecured Creditors appointed in the Cases by the United States Trustee pursuant to § 1102(a) of the Code.

**Debtors** shall mean BIC, AGB, and DMF.

**Disclosure Statement** shall mean the Disclosure Statement approved for distribution by the Bankruptcy Court pursuant to §1125 of the Code together with any amendments or modifications thereto.

**Disputed Claim** shall mean a Claim against Debtors which is not an Allowed Claim and which has not been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Claim Reserve** shall mean the reserve of Cash established and maintained by the Liquidating Debtors for Holders of Disputed Administrative Claims, Disputed Priority Claims, Disputed Secured Claims and Disputed Unsecured Claims, sufficient to satisfy such Claims upon allowance of such Claims in accordance with their treatment under the Plan.

**Disputed Unsecured Claim** shall mean any Unsecured Claim which is not an Allowed Unsecured Claim.

**Distribution** shall mean the Distribution to the holders of Allowed Claims.

6

**DMF** shall mean Dolphin Marine Fuel, LLC., as debtor-in-possession.

**DMF Liquidating Debtor** shall mean DMF upon entry of the Confirmation Order.

**Effective Date** shall mean a date 15 days after the Bankruptcy Court has entered the Confirmation Order and provided that no appeal of the Confirmation Order is pending; *provided, however*, that the Effective Date shall not occur until Debtors file the notice called for under the Plan with the Bankruptcy Court, and such notice shall not be filed until all of the preconditions to the occurrence of the Effective Date set forth in the Plan have been met.  In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the 15th day after the entry of the Confirmation Order provided that the notice has been filed and Debtors.

**Equity Interests** shall mean any and all issued or authorized membership interests, common stock, stock options and warrants in any of the Debtors.

**Estate Assets** shall mean all the assets, property and cash of the Debtors, as defined in section 541 of the Code (excluding assets previously distributed, expended or otherwise disposed of by the Debtors prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including, without limitation, the Causes of Action.

**Extraordinary Income** shall mean, respectively, as to each Liquidating Debtor, all income of a respective Liquidating Debtor received after the Petition Date including, without limitation, any funds recovered in connection with (a) any and all legal actions, or threatened legal actions, commenced pursuant to Code §§ 541 through 554 or pursuant to comparable provisions of the laws of any jurisdiction, whether federal, state or foreign; (b) any and all Causes of Actions; or any other civil case or action under Federal and State law; and (c) any funds from liquidation of assets not subject to the Lien of PNC.  Extraordinary Income includes not only actual recoveries from legal

proceedings but also any funds paid to settle such legal proceedings, whether or not any legal proceedings have been filed.  Extraordinary Income shall only be used as provided for in the Plan. Since the Debtors are no longer engaged in its ordinary business operations, all income received by a respective Liquidating  Debtor, after the Petition Date, except for proceeds of assets secured by the Lien of PNC, will be Extraordinary Income of such respective Estate.

**Extraordinary Income Expenses** shall mean, with respect to each Liquidating Debtor, all expenses, including, without limitation, professional fees, incurred by a respective Liquidating Debtor after the Effective Date pursuant to the Plan to recover Extraordinary Income for the benefit such Estate or otherwise to administer such Estate for the benefit of its creditors.

**Final Distribution Date** shall mean the date as soon as practicable after the last to occur of (such date with respect to Classes 11, 18, and 24 being determined by the Manager):  (a) the date that the last Claim becomes an Allowed Claim; or (b) the date upon which all Causes of Action have been liquidated and converted to Cash or abandoned.

**Final Order** shall mean an Order or judgment of the Bankruptcy Court which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending.

**Fiscal Year** shall mean the fiscal year of Debtors which commences on the first day of January and concludes on the final day of December in the following calendar year.

**Impaired Class** shall mean any Class whose members are holders of Claims or Interests which are impaired within the meaning of §1124 of the Code.

**Insider** shall have the same meaning as set forth in §101(31) of the Code.

**Intercompany Claim** means any claim by a Debtor against another Debtor or any account reflecting intercompany book entries.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, or other equity instruments in Debtors.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of Debtors but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by Debtors, the Creditors' Committee, a Liquidating Debtor, or any other party with standing to bring such a challenge.

**Liquidating Debtor(s)** shall mean each respective Debtor from and after the Confirmation Date. For the avoidance of doubt, the Liquidating Debtors shall be: (a) BIC Liquidating Debtor; (b) AGB Liquidating Debtor; and (c)DMF Liquidating Debtor and the collective group shall be referred to as Liquidating Debtors.

**Manager** shall mean the person or entity who is in charge of each Liquidating Debtor and who will manage and liquidate the Retained Assets on the Effective Date of the Plan. It is currently contemplated that Mr. Bob Morrison will be the Manager. In addition to the powers noted herein, the Manager shall have all the powers and authority of a manager under Florida Statutes Section 608 (or similar statute) and will be a fiduciary to each estate and its creditors.

**Maritime Lien Act** shall mean the Commercial Instruments and Maritime Liens Act, 46 U.S.C. § 31301 *et seq.*

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Order** shall mean a determination, decree, adjudication or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred in the ordinary course of business of Debtors; *provided, however*, that any due and unpaid, post-petition payment in respect of rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Pari Passu** shall mean creditors who, in marshalling assets, are entitled to receive out of the same fund without any precedence over each other.

**Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

**Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**Petition Date** shall mean August 28, 2015, the date on which Debtors filed voluntary petitions for relief under Chapter 11 of the Code.

**Plan** shall mean this Chapter 11 joint plan of reorganization, as amended or modified in accordance with the terms hereof or in accordance with the Code.

**Plan Payments** shall mean payments made by Liquidating Debtors pursuant to the terms of the Plan, including the payment of Nonordinary Course Administrative Claims.

**PNC** shall mean PNC Bank, N.A.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Prime Rate** shall be the prime rate of interest as published in the *WALL STREET JOURNAL* on the date the Confirmation Order is entered by the Bankruptcy Court.

**Priority Claim** shall mean a Claim other than an Administrative Claim to the extent such Claim is entitled to priority in payment under §507 of the Code.

**Pro Rata Share** means, respectively as to each Liquidating Debtor, as to any Allowed Classes 11, 18, and 24 claims, as of the Effective Date or such later date on which such claim becomes Allowed, a fraction of (i) the numerator of which is the amount of such Allowed Classes 11, 18, or 24 Claims and (ii) the denominator of which is the sum of (x) all Allowed Classes 11, 18, or 24 Claims as of such date plus (y) all Disputed Classes 11, 18, or 24 Claims as of such date.

**Professional** shall mean: (i) any professional retained in the Chapter 11 Cases pursuant to an order of the Bankruptcy Court in accordance with Section 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Section 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to Section 1129(a)(4) of the Bankruptcy Code.

**Property** shall have the same meaning as the term "property of the estate" delineated in Section 541 of the Code.

**Pro Rata** shall mean with respect to an Allowed Claim in a given class, that same proportion that the Allowed Claims bears to the aggregate of all Allowed Claims in such class.

**Retained Assets** shall mean all the Estate Assets except for the Returned Assets.

**Returned Assets** shall mean those certain assets which, as set forth further in Articles IV are being returned to a respective Lien holder as the indubitable equivalent of such Secured Claim.

**Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable

nonbankruptcy laws.  A Secured Claim which is challenged by Debtors, the Creditors' Committee, or the Liquidating Debtors shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in the Plan or the underlying security interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as defined in 11 U.S.C. §101(51).

**Tax Claim** shall mean an unsecured Claim for taxes entitled to priority under §507(a)(8) of the Code.

**Unclaimed Property** shall mean any cash, or any other Property of the Debtors unclaimed for a period of six (6) months after any Distribution or, in the event that the Distribution was made on the Final Distribution Date, six (6) months after the Final Distribution Date.

**Unimpaired Class** shall mean any Class the members of which are the holders of Claims or Interests which are not impaired within the meaning of §1124 of the Code.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim, or an Administrative Claim or Intercompany Claim.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. §581, et seq. and, as used in the Plan, refers to the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

## ARTICLE II. - CLASSIFICATION OF CLAIMS AGAINST ALL DEBTORS AND INTERESTS IN ALL DEBTORS

All Claims and Interests treated under Article III of the Plan are divided into the following classes, which shall be mutually exclusive:

A.    Class 1 - Priority Wage, Vacation, and Benefit Claims (BIC).

Class 1 consists of all Claims against BIC entitled to priority pursuant to Sections 507(a)(3) and 507(a)(4) of the Code.

B.    Class 2 - Secured Claim of PNC (BIC).

Class 2 consists of the Allowed Secured Claim of PNC which arises from a prepetition Revolving Credit and Security Agreement dated October 15, 2013, an Export-Import Loan and Security Agreement dated October 15, 2013 and a Revolving Credit Note dated October 15, 2013. The Claim is secured by a perfected security interest in substantially all of the personal property assets of the owned by all Debtors, including without limitation, accounts receivable, inventory, equipment, and general intangibles.

C.    Class 3 - Secured Claim of C1 Bank (BIC).

Class 3 consists of the Allowed Secured Claim of C1 Bank which arises from a prepetition loan on real property located at 110 Timberlachen Circle, Unit 1000, 1004. 1008 and 1012, Lake Mary, Florida 32746 (the "Real Property").

D.    Class 4 - Secured Claim of Ally Bank (BIC).

Class 4 consists of the Allowed Secured Claim of Ally Bank ("Ally") which arises from a prepetition loan to purchase a 2013 Ford Econoline.

E.    Class 5 - M2 Lease Funds, LLC (BIC).

Class 5 consists of the Allowed Secured Claim of M2 Lease Funds, LLC ("M2 Lease") which arises from prepetition lease of furniture, fixtures, and office equipment.

F.     <u>Class 6 - Hand Arendall LLC (BIC)</u>

Class 6 consists of the Allowed Secured Claim of Hand Arendall LLC ("Hand").  The Claim is allegedly secured by a Lien in the amount of $1,545.00, which arises from prepetition legal work performed on behalf of the Debtor, on a $20,000.00 deposit held by Hand for legal fees.

G.     <u>Class 7 - Curacao Oil (Curoil), N.V (BIC).</u>

Class 7 consists of the Allowed Secured Claim of Curacao (Curoil), N.V. ("Curoil") which arises from the prepetition purchase of fuel.

H.     <u>Class 8 - Curacao (Aruba) Freezone, N.V.(BIC)</u>

Class 8 consists of the Allowed Secured Claim of Curacao (Aruba) Freezone, N.V. ("Curacao") which arises from prepetition purchase of fuel.

I.     <u>Class 9 - World Fuel Services, Inc.(BIC)</u>

Class 9 consists of the Allowed Secured Claim of World Fuel Services, Inc. ("World Fuel") which arises from a prepetition agreement for the sale, purchase and trade of bunkers and/or other marine fuel/lubrication products.  World Fuel has asserted the right of setoff against the Debtors; Debtors dispute the applicability of setoff.

J.     <u>Class 10 - Seminole County Tax Collector-Real Estate Taxes (BIC)</u>

Class 10 consists of the Allowed Secured Claim of the Seminole County Tax Collector in respect of the 2015 *ad valorem* real estate taxes on the Real Property

K.     <u>Class 11 - General Unsecured Claims (BIC)</u>.

Class 11 consists of the Allowed Claims of the BIC Unsecured Creditors.

L.     <u>Class 12 - Equity Interests in BIC</u>

Class 12 consists of any and all Equity Interests in BIC.

14

M.    <u>Class 13 - Priority Wage, Vacation, and Benefit Claims (AGB)</u>.

Class 13 consists of all Claims against AGB entitled to priority pursuant to Sections 507(a)(3) and 507(a)(4) of the Code.

N.    <u>Class 14 - Secured Claim of PNC (AGB)</u>.

Class 14 consists of the Allowed Secured Claim of PNC which arises from a prepetition Revolving Credit and Security Agreement dated October 15, 2013, an Export-Import Loan and Security Agreement dated October 15, 2013 and a Revolving Credit Note dated October 15, 2013. The Claim is secured by a perfected security interest in substantially all of the personal property assets of the owned by all Debtors, including without limitation, accounts receivable, inventory, equipment, and general intangibles.

O.    <u>Class 15 - Secured Claim of USBCDE Sub-CDE 88, LLC (AGB)</u>.

Class 15 consists of the Allowed Secured Claim of USBCDE Sub-CDE 88, LLC ("USB") which purports to be secured by a deposit account in the approximate amount of $65,000 (the "USB Account").

P.    <u>Class 16 - ARC Terminals Holdings, LLC (AGB)</u>.

Class 16 consists of the Allowed Secured Claim of ARC Terminals Holdings, LLC ("ARC") which arises from an alleged Lien pursuant to the Maritime Lien Act.

Q.    <u>Class 17 - World Fuel Services, Inc.(AGB)</u>

Class 17   consists of the Allowed Secured Claim of World Fuel Services, Inc. ("World Fuel") which arises from a prepetition agreement for the sale, purchase and trade of bunkers and/or other marine fuel/lubrication products. World Fuel has asserted the right of setoff against the Debtors; Debtors dispute the applicability of setoff.

R.      <u>Class 18 - General Unsecured Claims (AGB)</u>.

Class 18 consists of the Allowed Claims of the AGB Unsecured Creditors.

S.      <u>Class 19 - Equity Interests in AGB</u>

Class 19 consists of any and all Equity Interests in AGB.

T.      <u>Class 20 - Priority Wage, Vacation, and Benefit Claims (DMF)</u>.

Class 20 consists of all Claims against DMF entitled to priority pursuant to Sections 507(a)(3) and 507(a)(4) of the Code.

U.      <u>Class 21 - Secured Claim of PNC (DMF)</u>.

Class 21 consists of the Allowed Secured Claim of PNC which arises from a prepetition Revolving Credit and Security Agreement dated October 15, 2013, an Export-Import Loan and Security Agreement dated October 15, 2013 and a Revolving Credit Note dated October 15, 2013. The Claim is secured by a perfected security interest in substantially all of the personal property assets of the owned by all Debtors, including without limitation, accounts receivable, inventory, equipment, and general intangibles.

V.      <u>Class 22 - Secured Claim of Vopak Terminal Los Angeles, Inc.(DMF)</u>

Class 22 consists of the Allowed Secured Claim of Vopak Terminal Los Angeles, Inc. ("Vopak").

W.      <u>Class 23 - World Fuel Services, Inc.(DMF)</u>

Class 23 consists of the Allowed Secured Claim of World Fuel Services, Inc. ("World Fuel") which arises from a prepetition agreement for the sale, purchase and trade of bunkers and/or other marine fuel/lubrication products. World Fuel has asserted the right of setoff against the Debtors; Debtors dispute the applicability of setoff.

X.     <u>Class 24 - General Unsecured Claims (DMF)</u>.

Class 24 consists of the Allowed Claims of the DMF Unsecured Creditors.

Y.     <u>Class 25 - Equity Interests in DMF</u>

Class 25 consists of any and all Equity Interests in DMF.

## ARTICLE III - ADMINISTRATIVE EXPENSES FOR BIC, AGB AND DMF

A.     <u>Administrative Claims</u>.

1.     <u>Nonordinary Course Administrative Claims</u>.

a.     Any person, including any professional who has rendered services to Debtors during the course of the Cases, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under §503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; *provided, however*, that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim.  Failure to file a timely application, motion, or request for allowance pursuant to this Section by any holder of a Nonordinary Course Administrative Expense Claim, other than such a holder engaged or employed by the Liquidating Debtors shall bar such a claimant from seeking recovery on such Claim.

b.     Each holder of a Nonordinary Course Administrative Claim of Debtors shall be paid by Debtors one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder, on or before the Effective Date or such later date as may be agreed to by such holder, or, if the Claim does not become Allowed prior

to the Effective Date, on the date the Allowed Amount of such claim is determined by Final Order of the Bankruptcy Court.  As provided for in Article VI of the Plan, a respective Debtors' cash-on-hand, not subject to the PNC Lien, as of the Effective Date shall be first used to pay Nonordinary Course Administrative Claims, and to the extent such funds are insufficient, then payment on the Allowed Claims will be paid by the applicable Liquidating Debtor in Cash from Extraordinary Income.  Due to the uncertain timing associated with the recovery of Extraordinary Income, it is not possible to project exactly when such payments will be made.  However, nothing in this provision of the Plan shall preclude a respective Liquidating Debtor from paying any holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date provided that such Claim holder consents to different payment terms.

2.    _Ordinary Course Administrative Claims_.  Ordinary Course Administrative Claims will be resolved through the performance of the obligation by Liquidating Debtors in accordance with the terms and conditions of the agreement or applicable law giving rise thereto. An applicant for such Claim need not file an application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims.

B.    _Priority Tax Claims_.

Except to the extent that the Holder and the Liquidating Debtors have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive from the Liquidating Debtors, in full satisfaction of such Claim, payments equal to the Allowed Amount of such Claim. Allowed Priority Tax Claims will be paid based on a five (5) year amortization with final payment due on or before 5 years from Petition Date.  Each Allowed Priority Tax Claim will accrue interest at five percent (5%); the payments will be made quarterly.  Payments will commence

18

on the later of the Effective Date, or on such date as a respective Priority Claim becomes Allowed.

Debtors estimate that the filed amount of Priority Tax Claims will not exceed $50,000.00.

## ARTICLE IV - TREATMENT OF IMPAIRED CLASSES (BIC, AGB, and DMF)

A.    <u>Determination of Allowed Amounts</u>.

Treatment prescribed for Claims and Interests in the following sections of this Article IV shall in all events refer exclusively to the Allowed Amount of each respective Claim.  In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, Debtors reserve the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.  The Liquidating Debtors will finish prosecution of all Claim objections or related contested matters or adversary proceedings commenced prior to the Effective Date. Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction as to determination of all such issues pursuant to Article VII, Section G, of this Plan, and other applicable law.

B.    <u>Class 1 - Priority Wage, Vacation, and Benefit Claims (BIC)</u>.

Class 1 Claims consist of all Priority Claims, which are defined as those Claims against BIC entitled to priority pursuant to 11 U.S.C. §507(a)(3) and (4), and exclusive of Priority Tax Claims under 11 U.S.C. §507(a)(8). Class 1 Priority Claims in this Case include unsecured Claims for wages, salaries or commissions, as described in §507(a)(3)as well as for benefits delineated in §507(a)(4). To the extent any Class 1 Allowed Priority Claim is unpaid as of the

Effective Date, then such portion of the Allowed Amount of any such Claim shall be paid in quarterly installments over eighteen (18) months with interest at five percent (5%); provided, however, these Claims will be paid in full by the BIC Liquidating Debtor from BIC Extraordinary Income prior to any payments on Class 11 Allowed Unsecured Claims. Payments will commence on the Effective Date or the date on which such Priority Claim becomes allowed.

      C.       Class 2 - Secured Claim of PNC.(BIC)

      In full satisfaction of the Allowed Class 2 Claim, PNC shall retain its Lien and: (a) receive all the Cash subject to its Lien on the Effective Date; and (b) either (x) the proceeds of liquidation of accounts and other BIC assets subject to PNC's Lien; or (y) return of the PNC collateral as the indubitable equivalent of such portion of the Secured Claim with the return to occur on the Effective Date. To the extent PNC elects to have the BIC Liquidating Debtor administer and collect on the PNC, non-cash collateral, PNC and the Liquidating Debtor will first reach agreement as to fees and costs which be paid from such liquidation. PNC shall have an Allowed Class 11 Claim to the extent its Allowed Claim exceeds the value of the collateral subject to PNC's Lien.

      D.       Class 3 -Secured Claim of C1 Bank (BIC).

      In full satisfaction of the Allowed Class 3 Claim, C1 Bank shall retain its Lien and either be paid from the sale of the Real Property or shall receive the Real Property as the indubitable equivalent, and full satisfaction, of its Allowed Secured Claim. BIC Liquidating Debtor shall have six (6) months from the Effective Date to obtain a contract for a sale of the Real Property and, if such contract is obtained, another forty-five (45) days to close on such contract. If the sale contract is not in an amount sufficient to pay, in full, the Allowed Class 3 Claim, the Manager shall seek the consent of C1 prior to moving forward with the sale. Any sale of the Real Property will not be subject to taxes pursuant to Bankruptcy Code Section 1146(a).

      E.      <u>Class 4 - Secured Claim of Ally Bank (BIC)</u>.

In full satisfaction of the Allowed Class 4 Claim, Ally will receive the indubitable equivalent of its Allowed Secured Claim and will receive, on the Effective Date, the 2013 Ford Econoline, and, to the extent the Allowed Claim exceeds the value of the Collateral, a Class 11 Claim.

      F.      <u>Class 5 -M2 Lease (BIC)</u>.

In full satisfaction of the Allowed Class 5 Claim, M2 Lease shall receive the indubitable equivalent of its Allowed Secured Claim and will receive, on the Effective Date, the collateral securing its Claim and, to the extent such value is less than the Allowed Claim, a Class 11 Claim.

      G.      <u>Class 6 - Hand (BIC)</u>.

In full satisfaction of the Allowed Class 6 Claim, Hand will receive the indubitable equivalent of its Allowed Secured Claim and will receive, on the Effective Date, the collateral securing its Claim and, to the extent such value is less than the Allowed Claim, a Class 11 Claim.

      H.      <u>Class 7 - Curoil (BIC)</u> .

In full satisfaction of the Allowed Class 7 Claim, Curoil shall receive the indubitable equivalent of its Allowed Secured Claim and will receive, on the Effective Date, any remaining inventory sold by Curoil to BIC; however, BIC believes no such inventory exists and, as such, the entire Class 7 Claim will be treated pursuant to the terms of Class 11.

      I.      <u>Class 8 - Curacao (Aruba) (BIC)</u> .

In full satisfaction of the Allowed Class 8 Claim, Curacao shall receive the indubitable equivalent of its Allowed Secured Claim and will receive, on the Effective Date, any

remaining inventory sold by Curacao to BIC; however, BIC believes no such inventory exists and, as such, the entire Class 8 Claim will be treated pursuant to the terms of Class 11.

      J.      <u>Class 9 -World Fuel (BIC).</u>

      In full satisfaction of its Allowed Class 9 Claim, World Fuel shall receive the indubitable equivalent of its Secured Claim; however, Debtor believes the only Secured Claim is the right to argue set off in respect of any collection action.  World Fuel shall retain such right; however, such will not impact the ability of the BIC Liquidating Debtor to pursue relief under Chapter 5 of the Bankruptcy Code.  To the extent World Fuel's Allowed Claim exceeds the value of its collateral, World Fuel shall have a Class 11 Claim.

      K.      <u>Class 10 -Seminole County Tax Collector Real Estate Taxes (BIC)</u>.

      In full satisfaction of the Allowed Class 10 Claim, Seminole County shall retain its Lien and be paid the full amount of its Allowed Secured Claim upon the sale of the Real Property; however, to the extent the Real Property is returned to C1, any stay or injunction in place pursuant to the terms of the Plan shall be lifted and the Class 10 Claim Holder may pursue any and all nonbankruptcy rights and remedies.

      L.      <u>Class 11 -.Unsecured Creditors of BIC</u>

      In full satisfaction of the Class 11 Claims, such holders shall be entitled to share, *pro rata*, in all Extraordinary Income.  Distribution of Extraordinary Income shall be made by the Manager pursuant to the terms of the Plan and shall continue until the Final Distribution.  The amount of Extraordinary Income cannot be determined at this time; however, Debtor believes recovery via the Plan will produce the highest possible return for holders of Class 11 Claims.

M.    Class 12 - Interests in BIC.

Class 12 consists of the Interests in BIC which shall, on the Effective Date, be extinguished and of no further force or effect.

N.    Class 13 - Priority Wage, Vacation, and Benefit Claims (AGB).

Class 13 Claims consist of all Priority Claims, which are defined as those Claims against AGB entitled to priority pursuant to 11 U.S.C. §507(a)(3) and (4), and exclusive of Priority Tax Claims under 11 U.S.C. §507(a)(8). Class 13 Priority Claims in this Case include unsecured Claims for wages, salaries or commissions, as described in §507(a)(3)as well as for benefits delineated in §507(a)(4). To the extent any Class 13 Allowed Priority Claim is unpaid as of the Effective Date, then such portion of the Allowed Amount of any such Claim shall be paid in quarterly installments over eighteen (18) months with interest at five percent (5%); *provided, however*, these Claims will be paid in full by the AGB Liquidating Debtor from AGB Extraordinary Income prior to any payments on Class 18 Allowed Unsecured Claims.  Payments will commence on the Effective Date or the date on which such Priority Claim becomes allowed.

O.    Class 14 - Secured Claim of PNC (AGB).

In full satisfaction of the Allowed Class 14 Claim, PNC shall retain its Lien and:  (a) receive all the Cash subject to its Lien on the Effective Date; and (b) either (x) the proceeds of liquidation of accounts and other AGB assets subject to PNC's Lien; or (y) return of the PNC collateral as the indubitable equivalent of such portion of the Secured Claim with the return to occur on the Effective Date.  To the extent PNC elects to have the AGB Liquidating Debtor administer and collect on the PNC, non-cash collateral, PNC and the Liquidating Debtor will first reach agreement as to fees and costs which be paid from such liquidation.  PNC shall have an Allowed Class 18 Claim to the extent its Allowed Claim exceeds the value of the collateral subject to PNC's Lien.

23

P.    <u>Class 15- USB (AGB)</u>

In full satisfaction of the Allowed Class 15 Claim, USB will receive the indubitable equivalent of its Allowed Secured Claim and will receive, on the Effective Date, any remaining amount of the USB Account so long USB has a valid, first-priority lien on the USB Account.  To the extent the Allowed Claim of USB exceeds the value of the USB Account, the balance of the Class 15 Claim will be treated pursuant to the terms of Class 18.

Q.    <u>Class 16- ARC (AGB).</u>

In full satisfaction of the Allowed Class 16 Claim, ARC shall retain its Lien under the Maritime Lien Act and shall be paid, out of the AGB cash-on-hand, to the extent the Lien is a valid  first-priority Lien Claim.  To the extent the Allowed Claim of ARC exceeds the value of the ARC collateral, the balance of ARC's claim shall be treated pursuant to Class 18.

R.    <u>Class 17-World Fuel (AGB).</u>

In full satisfaction of its Allowed Class 17 Claim, World Fuel shall receive the indubitable equivalent of its Secured Claim; however, Debtor believes the only Secured Claim is the right to argue set off in respect of any collection action.  World Fuel shall retain such right; however, such will not impact the ability of the AGB Liquidating Debtor to pursue relief under Chapter 5 of the Bankruptcy Code.  To the extent World Fuel's Allowed Claim exceeds the value of its collateral, World Fuel shall have a Class 18 Claim.

S.    <u>Class 18 - Unsecured Creditors of AGB</u>

Class 18 consists of the Allowed UnSecured Claims in the AGB case.  In full satisfaction of the Class 18 Claims, such holders shall be entitled to share, *pro rata*, in all Extraordinary Income.  Distribution of Extraordinary Income shall be made by the Manager pursuant to the terms of the Plan and shall continue until the Final Distribution.  The amount of

24

Extraordinary Income cannot be determined at this time; however, Debtor believes recovery via the Plan will produce the highest possible return for holders of Class 18 Claims.

      T.    <u>Class 19 - Interests in AGB</u>

      Class 19 consists of the Interests in AGB which shall, on the Effective Date, be extinguished and of no further force or effect.

      U.    <u>Class 20 - Priority Wage, Vacation, and Benefit Claims (DMF)</u>.  .

      Class 20 Claims consist of all Priority Claims, which are defined as those Claims against DMF entitled to priority pursuant to 11 U.S.C. §507(a)(3) and (4), and exclusive of Priority Tax Claims under 11 U.S.C. §507(a)(8). Class 20 Priority Claims in this Case include unsecured Claims for wages, salaries or commissions, as described in §507(a)(3)as well as for benefits delineated in §507(a)(4). To the extent any Class 20 Allowed Priority Claim is unpaid as of the Effective Date, then such portion of the Allowed Amount of any such Claim shall be paid in quarterly installments over eighteen (18) months with interest at five percent (5%); *provided, however*, these Claims will be paid  in full by the DMF Liquidating Debtor from DMF Extraordinary Income prior to any payments on Class 24 Allowed Unsecured Claims.  Payments will commence on the Effective Date or the date on which such Priority Claim becomes allowed.

      V.    <u>Class 21 -Secured Claim of PNC (DMF)</u>.

      In full satisfaction of the Allowed Class 21 Claim, PNC shall retain its Lien and:  (a) receive all the Cash subject to its Lien on the Effective Date; and (b) either (x) the proceeds of liquidation of accounts and other DMF assets subject to PNC's Lien; or (y) return of the PNC collateral as the indubitable equivalent of such portion of the Secured Claim with the return to occur on the Effective Date.  To the extent PNC elects to have the DMF Liquidating Debtor administer and collect on the PNC, non-cash collateral, PNC and the Liquidating Debtor will first reach

25

agreement as to fees and costs which be paid from such liquidation.  PNC shall have an Allowed Class 24 Claim to the extent its Allowed Claim exceeds the value of the collateral subject to PNC's Lien.

W.    Class 22 Vopak (DMF).

In full satisfaction of the Allowed Class 22 Claim, Vopak shall retain the inventory which was stored in its facilities, free and clear of all liens, and be able to apply the deposit it is holding from DMF.  Vopak shall have no other claim or interest in these cases.

X.    Class 23-World Fuel (DMF).

In full satisfaction of its Allowed Class 23 Claim, World Fuel shall receive the indubitable equivalent of its Secured Claim; however, Debtor believes the only Secured Claim is the right to argue set off in respect of any collection action.  World Fuel shall retain such right; however, such will not impact the ability of the DMF Liquidating Debtor to pursue relief under Chapter 5 of the Bankruptcy Code.  To the extent World Fuel's Allowed Claim exceeds the value of its collateral, World Fuel shall have a Class 24 Claim.

Y.    Class 24- Unsecured Claims against DMF.

Class 24 consists of the Allowed UnSecured Claims in the DMF case.  In full satisfaction of the Class 24 Claims, such holders shall be entitled to share, *pro rata*, in all Extraordinary Income.  Distribution of Extraordinary Income shall be made by the Manager pursuant to the terms of the Plan and shall continue until the Final Distribution.  The amount of Extraordinary Income cannot be determined at this time; however, Debtor believes recovery via the Plan will produce the highest possible return for holders of Class 24 Claims.

Z.    Class 25 - Interests in DMF

Class 25 consists of the Interests in DMF which shall, on the Effective Date, be extinguished and of no further force or effect.

## ARTICLE V - UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

To the extent Debtors reject any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim pursuant to §365 of the Code arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease, and any Allowed Claim resulting from rejection shall be, respectively, either a Class 11, 18, or 24 Claim except as otherwise provided herein. Debtors shall have through and including the hearing on Confirmation within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not rejected by such date, then such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date. It is the position of Debtors that the executory contracts listed in the Schedule and Amended Schedule of Executory Contracts filed pursuant to Rule 1007, are the only executory contracts to which any of the Debtors was a party on the Petition Date.

## ARTICLE VI . - MEANS OF IMPLEMENTATION.

A.    Business Operations and Cash Flow.

The Plan contemplates that, upon entry of the Confirmation Order, the Debtors will, respectively, become Liquidating Debtors. All assets shall vest in the respective Liquidating Debtor with Liens attaching to the same, extent, validity, and priority which existed as of Petition Date. The equity of each Debtor will be extinguished and the Manager will immediately commence control of each Liquidating Debtor to administer the Plan and pursue Extraordinary Income. There will be no on-going operations of any Liquidating Debtor other than liquidation of assets and pursuit of

Extraordinary Income. The Debtors believe the proceeds of all Lien free assets and Extraordinary Assets will be sufficient to meet all required Plan payments.  Manager shall deliver, via bill of sale, as is/whereis, all Returned Assets within ten (10) days of the Effective Date.

       B.    <u>Separate Estates</u>.

       The Manager will be fully in control of each Liquidating Debtor; however, the Manager shall maintain separate accounts for each Liquidating Debtor and not co-mingle any funds or loan money between Liquidating Debtors.

       C.    <u>Funds Generated During Chapter 11</u>.

       Funds generated from operations until the Effective Date will be used for Plan Payments; provided, however, any funds subject to the Lien of PNC may not be used for any purpose other than payment to PNC without the written consent of PNC.

       D.    <u>Management and Control of Reorganized Debtors</u>.

       1.    <u>Directors/Managers/Officers</u>.  All prepetition directors/managers/officers shall be deemed to have resigned upon entry of the Confirmation Order and the administration and control of the Liquidating Debtors shall be vested in the Manager.  The Manager shall have all corporate authority vested in managers  under the applicable laws of the State of Delaware or, as applicable, Florida, including the power to take control of the Retained Assets, pursue the Causes of Action, make distributions, and to liquidate the Liquidating Debtors and to wind up their affairs.

       2.    <u>Court Approval</u>.  Although full operational and managerial control of the Liquidating Debtors will be vested in the Manager, the Manager will be required to obtain Court approval for:  (a) any compromise or settlement of any Cause of Action or Objection to Claim; (b) any asset sale not specifically authorized in the Plan in excess of $10,000; and (c) any payment to the Manager or any professional employed by the Manager in excess of $10,000.  The approval

28

required hereunder may be obtained by the use of negative notice upon fourteen (14) days' notice to PNC, the Office of the United States Trustee, and any party who provides notice that it wishes to be notified of the actions of the Manager contemplated hereunder ("Post Confirmation Notice"). A request to receive Post Confirmation Notice shall be filed with the Court and served on the Manager.  The Manager does not need Court permission to retain or replace any  professional.

     E.     <u>Additional Provisions</u>.

          1.     <u>Procedures For Resolving Disputed Claims</u>

             a.     <u>Prosecution of Objections to Claims</u>

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, any party in interest shall have the right to make and file objections to all Claims.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be Filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Confirmation Date.

Except as may be specifically set forth in the Plan, nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that, any Debtor had immediately prior to the commencement of the Chapter 11 Cases, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtors and the Liquidating Debtors shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and

other legal or equitable defenses that any Debtor had immediately prior to the commencement of the Chapter 11 Cases as if the Chapter 11 Cases had not been commenced.

    b.  <u>Estimation of Claims</u>

      Pursuant to the Plan, the Debtors may, at any time, request that the Bankruptcy Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

    c.  <u>Cumulative Remedies</u>

      In accordance with the Plan, all of the aforementioned Claims objections, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  Until such time as an Administrative Claim, Claim or Equity Interest becomes an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

d.     Payments and Distributions on Disputed Claims

As and when authorized by a Final Order, Disputed Claims that become Allowed Claims shall be paid from the Liquidating Debtors' Cash and Assets, such that the Holder of such Allowed Claim receives all payments and Distributions to which such Holder is entitled under the Plan in order to bring payments to the affected Claimants current with the other participants in the particular Class in question.  Except as otherwise provided in the Plan, no partial payments and no partial Distributions will be made with respect to a Disputed Claim until the resolution of such disputes by settlement or Final Order.  Unless otherwise agreed by the Liquidating Debtors or as otherwise specifically provided in the Plan, a Creditor who holds both an Allowed Claim and a Disputed Claim will not receive a Distribution until such dispute is resolved by settlement or Final Order.

e.     Allowance of Claims and Interests

(i).     Disallowance of Claims

According to the Plan, all Claims held by Entities against whom any Debtor has obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not vote to accept or reject the Plan, both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due the related Debtor by that Entity are turned over to such Debtor.

(ii).     Allowance of Claims

Except as expressly provided in the Plan, no Claim or Equity Interest shall be deemed Allowed by virtue of the Plan, Confirmation, or any Order of the Bankruptcy Court

31

in the Chapter 11 Cases, unless and until such Claim or Equity Interest is deemed Allowed under the Bankruptcy Code or the Bankruptcy Court enters a Final Order in the Chapter 11 Cases allowing such Claim or Equity Interest.

f.       <u>Controversy Concerning Impairment</u>

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court, after notice and a hearing, shall determine such controversy before the Confirmation Date.  If such controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan shall govern.

g.       <u>Intercompany Claims</u>

The Plan contemplates the elimination and cancellation of all intercompany claims.  Any such claims were largely bookkeeping entries and arose due to a consolidated cash management system and a common disbursement account related to Debtors prepetition asset based loan.

## ARTICLE VII. - MISCELLANEOUS.

A.       <u>Effect of Confirmation</u>

1.       <u>Cancellation of Equity</u>

On the Effective Date, all of the Debtors' outstanding Preferred and Common Stock, and Membership Interests will be extinguished.  The equity in the Debtors will receive no distribution unless and until all Allowed Claims, in the respective cases, have been paid in full.

2.       <u>Authority to Effectuate the Plan</u>

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides all matters provided under the Plan will be deemed to be authorized and approved without

further approval from the Bankruptcy Court. The Confirmation Order will act as an order modifying the Debtors' by-laws such that the provisions of this Plan can be effectuated. The Liquidating Debtors and Manager shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out the Plan.

        3.      Post-Confirmation Status Report

        Pursuant to the Plan, within 120 days of the entry of the Confirmation Order, the Manager will file status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee, the Creditor Agent, and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

        4.      Escrows

        Pursuant to the Plan, all escrows previously established in the Chapter 11 Cases and still in existence on the Effective Date will continue to be administered, and the escrowed funds shall be released, according to their terms and any orders of the Bankruptcy Court previously entered or this Plan. Escrowed funds that are released to the Liquidating Debtors after the Effective Date will be used to achieve Consummation and carry out the Plan.

        B.      Means for Implementation of Classes 11, 18, and 24

        1.      Liquidating Debtors. On the Effective Date, all Retained Assets and Causes of Action shall be transferred to the Liquidating Debtors to be asserted and prosecuted by the Manager. From and after Effective Date, the Manager and no other person shall be authorized to litigate any Causes of Action. The Manager shall also be vested with all right, powers and benefits afforded a "trustee" under Sections 704 and 1106 of the Bankruptcy Code.

2.      <u>Manager</u>.   The Debtors have selected Robert Morrison to an serve as the Manager of the Liquidating Debtors for a period of time commencing on the Effective Date. The Manager shall be deemed a fiduciary of the Estates and the Classes 11, 18, and 24 Creditors who may be entitled to receive distributions from the respective Liquidating Debtor under the Plan.  The Manager shall perform the duties and have the rights and obligations proscribed herein.

The Debtors shall be authorized and directed to execute, deliver, receive and exchange on behalf of the Estates any and all documents necessary to effectuate the transfer control of the Liquidating Debtors to the Manger on the Effective Date.

3.      <u>Compensation for Manager</u>**.**   The Manager shall be paid on a per hour basis plus actual out-of-pocket expenses, to be paid quarterly upon Court approval.  Mr. Morrison's current rate is $350 per hour.

4.      <u>Removal of Manager</u>.   The Manager may be removed, for good cause, upon notice and hearing and after order by the Bankruptcy Court.

5.      <u>Preservation, Prosecution and Defense of Causes of Action</u>.

On behalf of the Liquidating Debtors, the Manager shall have the right to pursue any and all Causes of Action of the Debtors that will be transferred to the respective Liquidating Debtor, including all pending adversary proceedings, whether or not such causes of action have been commenced as of the Effective Date, and the Liquidating Debtor shall be substituted as the real party in interest in any such actions commenced by or against the Debtors, the Debtors' Estates or the Committee.  The Manager shall prosecute or defend, as appropriate, such actions through final judgment, any appeals deemed necessary and appropriate by the Manager and collection; provided, however, that the Manager shall be authorized at any point in any litigation (a) to enter into such settlements as the Manager deems to be in the best interest of creditors, subject

34

to Bankruptcy Court approval after notice and a hearing in accordance with Bankruptcy Rule 9019; or (b) to abandon, dismiss and/or decide not to prosecute any such litigation if the Manager deems such action to be in the best interest of creditors without Bankruptcy Court or other approval.

        6.      <u>Retention of Professionals</u>**.**  The Liquidating Debtors via the Manager may retain professionals on such terms as the Manager deems reasonable, without Bankruptcy Court approval, except that payments to the professionals for post-confirmation services and expenses shall be made only upon application and Court approval and no more than quarterly.

        7.      <u>Payment of Costs/Expenses</u>.  All costs and expenses and obligations incurred by the Manager in administering the Plan or in any manner connected, incidental or related thereto shall be a charge against the respective Liquidating Debtor, including but not limited to, payments to the Manager and any attorneys, accountants, brokers or other professionals employed by the Liquidating Debtor.

        C.      <u>Dissolution of Creditors' Committee</u>.

        As of the Effective Date, or as soon as practical thereafter, the duties of the Committee and any professionals retained by the Committee in this case shall terminate except as to: (i) applications under Section 330 and 503 of the Bankruptcy Code and the Committee's objections to such application; and (ii) enforcement of the provisions of the Plan until the Plan is substantially consummated.  On the Effective Date, the BIC Liquidating Debtor shall be substituted in place of the Committee in any legal proceedings in which the Committee is a named party and shall have all rights and duties of the Committee in such proceeding.  No further action between the BIC Liquidating Debtor and Committee shall be necessary to effectuate such transfer.

D.      Conditions to Effectiveness.

The Effective Date shall not occur until all of the following conditions have been satisfied:

1.      The entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtors and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however,* that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, Debtors may and in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

2.      Inclusion in the Confirmation Order of an injunctive provision staying, restraining, and enjoining all individuals or entities, from commencing, enforcing, perfecting, or setting off any claim, judgment, or interest against Debtors, or any property thereof, or against any of Debtors' transferees including Liquidating Debtors, for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Equity Interest provided, that such injunctive provision shall not prevent any governmental unit from enforcing such governmental unit's police or regulatory power.

3.      The Manager has been retained, and Debtors shall have taken all necessary actions and joined in all necessary motions to assign the Retained Assets and Causes of Action to the Liquidating Debtors.

4.      The Bankruptcy Court shall have approved the identity and appointment of the Manager.

Upon the satisfaction or waiver of each of the foregoing conditions, the Debtors shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become Effective

36

Bunkers International Corp., Jtly Administered
Case No. 6:15-bk-7397-CCJ                                                    U:\Bkry\Bunkers International\Bunkers International Corp\PLDGS\Plan & Discl Stmts\BIC Plan - FINAL 12.23.2015.wpd

without further Order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein, including those set forth below, have been met.

E.    <u>Retention of Jurisdiction</u>.

After the Effective Date, Debtors and Liquidating Debtors will be free to perform all functions assigned to them under the Plan without approval of the Bankruptcy Court, except as specifically set forth herein.  However, the Bankruptcy Court will continue to retain jurisdiction in these Cases with respect to the following matters:

1.    All objections to the allowance of Claims and Interests and the compromise of Claims;

2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in Debtors, Committee or Liquidating Debtors;

3.    Any adversary proceedings or contested matters brought by Debtors or the Liquidating Debtors, including, without limitation, the Causes of Action, the proceedings then pending or thereafter brought pursuant to §§544, 545, 547, 548, 549, and 550 of the Code or other proceedings calculated to generate payments to Holders of Allowed Classes 11, 18 or 24 Claims;

4.    All controversies and disputes arising under or in connection with the Plan;

5.    The enforcement and interpretation of the provisions of the Plan;

6.    To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.    Any motion to modify the Plan in accordance with Code §1127, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.    All Claims arising from the rejection of any executory contract or lease; and

37

9.      Such other matters as may be provided for in the Code or the Plan.

10.      To protect the property of the Estates from adverse claims or interference inconsistent with the Plan.

11.      To ensure that Distributions are accomplished as provided herein and to resolve any dispute concerning the right of any person to a Distribution hereunder, applicable law or under a contract or agreement.

12.      To hear and determine any action or controversy by or against the Liquidating Debtors or Manager.

F.      <u>Headings</u>.

Article, Section and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

G.      <u>Cramdown</u>.

Debtors reserve the right to seek confirmation of the Plan under §1129(b) of the Code.      H.      <u>Discharge</u>.

As of the Effective Date and pursuant to §1141 of the Code, Debtors shall be not discharged from any debt that arose before the Confirmation Date.

I.      <u>Regulatory Approval and Retirement Plans</u>.

It will not be necessary for Debtors to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan.  The Plan will be implemented pursuant to its provisions and the provisions of the Code.  Debtors do not have any retirement plans.

J.      <u>Notices</u>.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by facsimile transmission or mailed by United States Mail to the following:

Counsel for the Debtors:

R. Scott Shuker, Esquire
Mariane L. Dorris, Esquire
Latham, Shuker, Eden & Beaudine, LLP
111 N. Magnolia Avenue, Suite 1400
Orlando, Florida 32801

Debtors:

Mr. John Canal
Bunkers International Corp
1071 S Sun Drive, Suite 3
Lake Mary, FL  33746

If to Official Committee of Unsecured Creditors:

John Hutton, Esquire
Greenberg Traurig, PA
333 SE Second Avenue, Suite 4400
Miami, FL  33131

United States Trustee
400 West Washington St
Orlando, Florida 32801

K.    Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Liquidating Debtors by wire transfer or by automated clearing house transfer from a domestic bank, at the option of the Liquidating Debtors.

L.    Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Liquidating Debtors in making distributions under this Plan shall comply with all tax withholding and reporting

39

requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Liquidating Debtors may withhold the entire Distribution due to any holder of an Allowed Claim until such time as such holder provides to the Liquidating Debtors, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Liquidating Debtors to the appropriate authority. If the holder of an Allowed Claim fails to provide to the Liquidating Debtors the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Liquidating Debtors to the holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

      M.      <u>Transmittal of Distributions to Parties Entitled Thereto.</u>

      All distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the holder of an Allowed Claim in respect thereof or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the holder with the provisions of this Plan to (i) its address set forth in its proof of claim, (ii) the latest mailing address filed for the holder of an Allowed Claim entitled to a distribution, (iii) the latest mailing address filed for a holder of a filed power of attorney designated by the holder of such Allowed Claim to receive distributions, (iv) the latest mailing address filed for the holder's transferee as identified in a filed notice served on the Debtor pursuant to Bankruptcy

Rule 3001(e), or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtors' books and records.

    N.    <u>Distribution of Unclaimed Property</u>.

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan which is unclaimed after six months following the relevant distribution date shall be forfeited, and such distribution together with all interest earned thereon shall become an Asset to be distributed and conveyed to the respective Liquidating Debtor in accordance with the provisions of this Plan. However, checks issued by the Liquidating Debtor in respect of Allowed Classes 11, 18, or 24 Claims will be null and void if not cashed within sixty days of the date of issuance and revest in respective Liquidating Debtor. Requests for reissuance of any such check shall be made in writing to the Liquidating Debtor by the Holder of the Allowed Classes 11, 18 , or 24 Claim with respect to the check originally issued.

    O.    <u>Fractional Cents and Equity; Multiple Distributions</u>.

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents or distribution of fractional equity will be made under this Plan. Cash will be issued to holders entitled to receive a Distribution of Cash in whole cents (rounded to the nearest whole cent) and equity will be rounded to the nearest whole number. To the extent that cash remains undistributed as a result of rounding of such fractions, such cash shall be treated as unclaimed property under the Plan.

If any Holder of an Allowed Classes 11, 18, or  24 Claim shall be entitled to any interim distribution in an amount less than $50.00, such distribution shall instead be held by the Manger and distributed to such Holders of an Allowed Classes 11, 18 or 24 Claim (less expenses) if and when with any additional distribution is made to such creditor on the Final Distribution Date.

P.      Transfer Taxes.

Under Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer, under this Plan shall not be taxed under any law imposing a stamp tax or similar tax.

Q.      Investments.

The Manager shall be permitted to invest all or a portion of the Cash in the Liquidating Debtors in securities issued or directly guaranteed by the United States government or any agency thereof, commercial paper of corporations rated at least "A-1" by Standard & Poor's Corporation or rated at least "P-1" by Moody's Investor Services, Inc., interest bearing certificates of deposit, time deposits, savings or other deposit accounts, bankers' acceptances and overnight bank deposits and repurchase agreements.  All interest and proceeds from such investments shall become part of the respective Liquidating Debtor..

R.      Revocation and Withdrawal of the Plan.

The Debtors reserve the right to withdraw the Plan at any time before entry of the Confirmation Order.  If (i) the Debtors revoke and withdraw this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then the Plan shall be deemed null and void.

S.      Modification of Plan

The Debtors may seek to amend or modify the Plan in accordance with 1127(b) of the Bankruptcy Code, or remedy and defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.  On or before the Effective Date, Debtors may issue, execute, deliver, or file with the Bankruptcy Court or record

any agreements and other documents, and take any action as may be necessary or appropriate to

effectuate, consummate, and further evidence the terms and conditions of the Plan.

**DATED** this 23rd day of December 2015, in Orlando, Florida.

/s/ R. Scott Shuker
R. Scott Shuker, Esq.
Florida Bar No. 984469
Mariane L. Dorris, Esq.
Florida Bar No. 0173665
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
111 N. Magnolia Avenue, Suite 1400
Orlando, Florida  32801
Telephone:  407-481-5800
Facsimile:  407-481-5801
*Attorneys for Debtors*

43