# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
### www.flmb.uscourts.gov

In re:                                           CASE NO. 6:15-bk-07397-CCJ

BUNKERS INTERNATIONAL CORP,      CHAPTER 11

Debtor.                                          Jointly-administered[1]

_____/

## OBJECTION OF LIQUIDATING AGENT OF BUNKERS INTERNATIONAL CORP. TO ALLOWANCE OF CLAIM 51 OF VAN-OIL PETROLEUM LTD.

---

### NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING

Pursuant to Local Rule 2002-4, the Court will consider this objection without further notice of hearing unless a party in interest files a response within thirty (30) days from the date set forth on the proof of service attached to this paper, plus three (3) days for mailing.  If you object to the relief requested in this paper, you must file your objection with the Clerk of the Court at 400 W. Washington Ave, Suite 5100, Orlando, Florida 32801, and serve a copy on the Liquidating Agent's attorney, R. Scott Shuker, Esq., Latham, Shuker, Eden & Beaudine, LLP, 111 N. Magnolia Avenue, Suite 1400, Orlando, Florida 32801.

If you file and serve a response within the time permitted, the Court will hold a preliminary, nonevidentiary hearing on the response.  If you do not file a response within the time permitted, the Court will consider that you do not oppose the granting of the relief requested in the objection, will proceed to consider the objection without further notice of hearing, and may grant the relief requested.

---

**ROBERT MORRISON**, Liquidating Agent for BUNKERS INTERNATIONAL CORP.,

(the "Liquidating Debtor"), by and through his undersigned counsel, and pursuant to 11

U.S.C. §§502, 547, and 550 of the United States Bankruptcy Code, (the "Bankruptcy Code"),

Local Rule 2002-4, and Federal Rules of Bankruptcy Procedure 3007 and 9014, (the

"Bankruptcy Rules"), hereby submits this Objection (the "Objection") to Claim 51 ("Claim")

---

[1] Jointly-administered cases: Bunkers International, Corp., Case 6:15-bk-7397-CCJ; Atlantic Gulf Bunkering, LLC, Case 6:15-bk-7402-CCJ; Dolphin Marine Fuels, LLC, Case 6:15-bk-7404-CCJ (collectively, the "Debtors")

submitted by, or on behalf of, Van-Oil Petroleum Ltd. ("Van-Oil") which has been filed in the above-referenced case, and for the reasons set forth below, seeks entry of an order disallowing the Claim; and, in support thereof, states as follows:

## I. JURISDICTION

1.      This Court has jurisdiction over the Objection pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 502, 547, and 550.

2.      This matter is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. § 157(b) and is a contested matter governed by Federal Rules of Bankruptcy Procedure 3007 and 9014. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. PROCEDURAL AND FACTUAL HISTORY

3.      On August 28, 2015 (the "Petition Date"), the Debtors filed their voluntary petition for reorganization under Chapter 11 of the Code. Thereafter, on September 9, 2015, the Court entered an order jointly administering the Debtors under Bunkers International Corp, Case No. 6:15-bk-7397-CCJ (Doc No. 33).

4.      On February 9, 2016, the Court entered the order confirming the Plan of Liquidation, as Modified ("Plan") of the above Liquidating Debtor ("Confirmation Order") (Doc No. 274).

5.      The Confirmation Order designated Robert Morrison as the Liquidating Agent.

6.      Prior to the Petition Date, the Liquidating Debtor made payments to Van-Oil in the amount of $3,250,000.00 (the "Transfers"). Upon review of the books and records of the Liquidating Debtor, the Liquidating Agent sent a letter to Van-Oil demanding the return of the Transfers; however, as of the date of the filing of this Objection, Van-Oil has not paid the

2

amount demanded by the Liquidating Agent.  Liquidating Agent's Demand Letter is attached hereto as **Exhibit A**.

7.      Van-Oil filed a general unsecured claim in the amount of $51,343.90.  Van-Oil's proof of claim is designated as Claim No. 51 in the Bankruptcy Case, a copy of which is attached as **Exhibit B**.

### III.    THE CLAIM OBJECTION

8.      Pursuant to 11 U.S.C. § 502(d) of the Bankruptcy Code, unless an entity or transferee receiving a payment that is avoidable under § 547 of the Bankruptcy Code has paid the amount for which such entity or transferee is liable under § 550 of the Bankruptcy Code, any claim of such entity or transferee shall be disallowed.

9.      Van-Oil has not paid or surrendered the Transfers to the Liquidating Agent. Therefore, the Claim, and any other claims or amendments thereto which Van-Oil has filed in this case, must be disallowed.

10.     Objections to claims are governed by 11 U.S.C. §502(a), which provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed; unless a party in interest…objects."  Section 502(b) provides that "if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount…."

11.     Bankruptcy Rule 3001(f) provides that a proof of claim executed and filed in the accordance with the Bankruptcy Rules "shall constitute *prima facie* evidence of the validity and amount of the claim."  The burden of proof is on the objecting party to produce evidence equivalent in probative value to that of the creditor to rebut the *prima facie* effect of the proof of

claim. However, "the ultimate burden of persuasion is always on the claimant." *In re Holm,* 931 F.2d 620, 623 (9th Cir. 1991) (citing 3 L. KING, COLLIER ON BANKRUPTCY §502.02, at 502-22 (15th ed. 1991) (footnotes omitted)); *see also In re Leatherland Corp.* 302 B.R. 250, 259 (Bankr. N.D Ohio 2003). A properly supported objection to a claim initiates a contested matter under the Bankruptcy Rules. *See* Fed. R. Bankr. P. 3007 (adv. comm. note).

12. The Liquidating Agent expressly reserves the right to supplement this Objection on any other grounds not stated in this Objection.

**WHEREFORE,** the Liquidating Agent respectfully requests the Court enter an order: (a) disallowing in its entirety the Claim 51 of Van-Oil; and (b) granting such additional relief as the Court deems just and proper under the circumstances.

**RESPECTFULLY SUBMITTED** this 30th day of September 2016.

/s/ Mariane L. Dorris
R. Scott Shuker, Esq.
Florida Bar No. 984469
rshuker@lseblaw.com
Mariane L. Dorris, Esq.
Florida Bar No. 0173665
mdorris@lseblaw.com
Daniel A. Velasquez, Esq.
Florida Bar No. 0098158
dvelasquez@lseblaw.com
**Latham, Shuker, Eden & Beaudine, LLP**
111 N. Magnolia Ave., Suite 1400
Orlando, Florida 32801
Telephone: (407) 481-5800
Facsimile: (407) 481-5801
bknotice1@lseblaw.com
*Attorneys for the Liquidating Agent*

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

In re:                                          CASE NO. 6:15-bk-07397-CCJ

BUNKERS INTERNATIONAL CORP,                     CHAPTER 11

Debtor.                                         Jointly-administered
_____/

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true copy of the **OBJECTION OF LIQUIDATING AGENT OF BUNKERS INTERNATIONAL  CORP. TO ALLOWANCE OF CLAIM 51 OF VAN-OIL PETROLEUM LTD.,** together with all exhibits, has been furnished by electronic transmission and/or U.S. First Class mail, postage prepaid, to:  Van-Oil Petroleum Ltd., c/o Militiadis Papangelis, Attorney, V&P Law Firm 61-65 Filonos Street, Paraeus, Greece 16672 (as set forth on the Proof of Claim); Van-Oil Petroleum Ltd, 444 Jiron Indepencia, Callo, Peru; Van-Oil, 244 Fifth Avenue, Suite 2410, New York, NY  10001; Van-Oil Petroleum Ltd., Akara Bldg., 24 de Castro Street, Wickhams Cay 1, Tortola VG1110, BVI; and the U.S. Trustee, 400 W. Washington Ave., Orlando, Florida 32801, this 30th day of September 2016.

                                 /s/ Mariane L. Dorris
                                 Mariane L. Dorris, Esq.

# LATHAM, SHUKER, EDEN & BEAUDINE, LLP
### ATTORNEYS AT LAW

MICHAEL J. BEAUDINE
CINDY CAMPBELL
MICHAEL G. CANDIOTTI
JAN ALBANESE CARPENTER
DANIEL H. COULTOFF
ANDREW C. D'ADESKY
MARIANE L. DORRIS
JENNIFER S. EDEN
DOROTHY F. GREEN

111 NORTH MAGNOLIA AVENUE, SUITE 1400
ORLANDO, FLORIDA 32801
POST OFFICE BOX 3353
ORLANDO, FLORIDA 32802
TELEPHONE: (407) 481-5800
FACSIMILE: (407) 481-5801
WWW.LSEBLAW.COM

JOSHUA D. GROSSHANS
BRUCE D. KNAPP
PETER G. LATHAM
JUSTIN M. LUNA
LORI T. MILVAIN
* R. SCOTT SHUKER
JONATHAN A. STIMLER
CHRISTINA Y. TAYLOR
DANIEL A. VELASQUEZ

* BOARD CERTIFIED
BUSINESS BANKRUPTCY ATTORNEY

June 7, 2016

DIRECT DIAL: (407) 481-5849
EMAIL: MDORRIS@LSEBLAW.COM

*Via International Mail*

VAN-OIL PETROLEUM LTD
AKARA BLDG., 24 DE CASTRO STREET
WICKHAMS CAY 1
TORTOLA VG1110
BRITISH VIRGIN ISLANDS

> RE:   **PREFERENCE DEMAND IN THE TOTAL AMOUNT OF $3,250,000.00**
> **IN RE: BUNKERS INTERNATIONAL CORP., CASE NO. 6:15-BK-07397-CCJ**

Dear President/General Manager:

The undersigned represents Robert Morrison, the Liquidating Agent for BUNKERS INTERNATIONAL CORP ("BIC"), and its affiliated and related entities, ATLANTIC GULF BUNKERING, LLC ("AGB"), and DOLPHIN MARINE FUELS, LLC ("DMF"), which are jointly-administered debtors and debtors-in-possession (collectively, the "Debtors").

As you may know, on August 28, 2015 (the "Petition Date"), the Debtors filed petitions for relief pursuant to chapter 11 of the Bankruptcy Code. On February 9, 2016, the Court confirmed the Debtors' Joint Plan of Liquidation ("Confirmation Order"). Pursuant to the Confirmation Order, Robert Morrison ("Morrison") was appointed the Liquidating Agent for the Debtors. Pursuant to sections 547 and 550 of the Bankruptcy Code, 11 U.S.C. §§ 547 and 550 and subject to certain defenses, transfers of the Debtors' property to or for the benefit of a creditor, for or on account of an antecedent debt, while the Debtors were insolvent, during the ninety-day period preceding the Petition Date (i.e. May 30, 2015, through August 28, 2015, the "Preference Period") and which enables that creditor to receive more than it would have in a chapter 7 bankruptcy case, is avoidable and recoverable.

BIC's records indicate that you received payments totaling $3,250,000.00 (the "Preferential Transfers") from BIC during the Preference Period that appear to be recoverable by BIC. These Preferential Transfers will then be returned to the BIC's bankruptcy estate and distributed to creditors pursuant to the Bankruptcy Code.

**EXHIBIT "A"**

LATHAM, SHUKER, EDEN & BEAUDINE, LLP
June 7, 2016
Page 2

Morrison is preparing to initiate lawsuits to recover any avoidable transfers, including the Preferential Transfers. In order to avoid any adverse legal action against you based on the Preferential Transfers, Morrison hereby demands the return of all of the Preferential Transfers you received from BIC during the Preference Period within 30 days of your receipt of this letter. Checks should be made payable to Bunkers International Corp. and mailed to the address provided in the letterhead. Failure to pay in full the Preferential Transfers received from BIC, may cause prejudgment interest to be added to the balance of the claim from the date of this demand letter.

We have sent this letter directly to you, because no attorney has entered an appearance on your behalf in the Debtors' bankruptcy cases. If you have any questions or believe that you have any relevant defenses to an action to recover the Preferential Transfers, please contact the undersigned at (407) 481-5849 or *via* e-mail at mdorris@lseblaw.com.

Very truly yours,

LATHAM, SHUKER, EDEN & BEAUDINE, LLP

Mariane L. Dorris

MLD/mn

cc: Robert Morrison, Liquidating Agent

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Bunkers International Corp. |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | __Middle__ District of __Florida__ (State) |
| Case number: | **6:15–bk–07397–CCJ** |

FILED

**U.S. Bankruptcy Court**
**Middle District of FL**

12/11/2015

**Lee Ann Bennett, Clerk**

## Official Form 410
# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | **Identify the Claim** |
|---|---|

**1. Who is the current creditor?**

Van–Oil Petroleum Ltd.

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Van–Oil Petroleum Ltd.

Name
V&P Law Firm
61–65 Filonos Street
Piraeus, Greece, FL 16672

Contact phone 30210–413–5407

Contact email mpapangelis@vplaw.gr

Where should payments to the creditor be sent? (if different)

Name
Van–Oil Petroleum, Ltd.
444 Jiron Independencia
Callo, Peru, FL 01

Contact phone 511–199–757–8833

Contact email asousa@van-oil.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☐ No
☑ Yes. Claim number on court claims registry (if known) 51     Filed on 12/11/2015
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?

Official Form 410                    Proof of Claim                    page 1

EXHIBIT "B"

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6. Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| **7. How much is the claim?** | $ 51343.90     **Does this amount include interest or other charges?**<br>_____    ☐ No<br>         ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Goods Sold—Fuel to MV BRO NORDBY

**9. Is all or part of the claim secured?**

☑ No
☐ Yes. The claim is secured by a lien on property.

     **Nature of property:**
     ☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
     ☐ Motor vehicle
     ☐ Other. Describe: _____

     **Basis for perfection:** _____

     Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

     **Value of property:**      $ _____

     **Amount of the claim that is secured:**      $ _____

     **Amount of the claim that is unsecured:**      $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

     **Amount necessary to cure any default as of the date of the petition:**    $ _____

     **Annual Interest Rate** (when case was filed)    _____ %

     ☐ Fixed
     ☐ Variable

| | |
|---|---|
| **10. Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| **11. Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410                     Proof of Claim                    page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No ☐ Yes. *Check all that apply*: | | Amount entitled to priority |
|---|---|---|---|---|
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ | |
| | | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ | |
| | | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor&rsquo;s business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ | |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ | |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ | |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies | $ | |
| | | *Amounts are subject to adjustment on 4/1/16 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    12/11/2015
     MM / DD / YYYY

Militiadis Papangelis
Signature

Print the name of the person who is completing and signing this claim:

| Name | Militiadis Papangelis |
|---|---|
| | First name    Middle name    Last name |
| Title | Attorney |
| Company | V&P Law Firm |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 61–65 Filonos Street |
| | Number   Street |
| | Piraeus, Greece 16672 |
| | City   State   ZIP Code |
| Contact phone | +30–210–413–5407    Email   mpapangelis@vplaw.gr |



# Van-Oil

| **INVOICE** | **5910** |
|---|---|

To:

**BRO NORDBY**
AND/OR HER OWNERS/OPERATORS AND
**BUNKERS INTERNATIONAL CORP.**
1071 S SUN DRIVE, SUITE 3
LAKE MARY,FLORIDA 32746
USA

| | |
|---|---|
| Vessel : | BRO NORDBY |
| Port: | CALLAO |
| Delivery Date: | July 6, 2015 |
| Our Order Referen | 5910 |

| Product and/or Services | Qty/unit | USD/ Unit | |
|---|---|---|---|
| IFO 380 CST RMG 380 SULPHUR MAX. 3.5% | 100.359 | 397.00 **PMTD** | 39,842.52 |
| Pollution Fee | | | 600 00 |
| Extra Charges ( Barge Lmp Sum , Others) | | 7,000.00 | 7,000.00 |

| Total Mount Due | | 47,442.52 |
|---|---|---|
| Payment due Latest: | August 5, 2015 | |

Bank Instructions:

Van-Oil Petroleum Ltd
Helm Bank, 999 Brickell Avenue, Miami, Fl 33131
ABA: 067011456
Account: ███████



THE INTERNATIONAL BUNKER
INDUSTRY ASSOCIATION
REGISTERED ADDRESS · AKARA BLDG. 24 DE CASTRO  BVI VG1110



**Oiltrading**

Jr. Independencia N° 444 Callao-Peru Phone (511) 4200333

# VAN-OIL

## BUNKER DELIVERY RECEIPT – RECIBO BUNKER

| DATE: JULY , *06* , 2015 | DELIVERY LOCATION: **CALLAO PORT** | DELIVERY BY : **BARGE** | NUMBER ORDER **5910** |
|---|---|---|---|

VESSEL NAME:

# BRO NORDBY

FLAG:

IMO NUMBER : 9322712

| PRODUCT | BARRELS 60° | GALLONS 60° | METRICS TONS |
|---|---|---|---|
| **IFO 380** | **655** | **27,510** | **100.359** |

### PROPERTIES

| ESPECIF GRAVITY AT 60° F | VISCOSITY CTS AT 50°C/122 °F | API AT 60°F | DENSITY AT 15°C | TEMP °F | FLASH °C | POUR °F | WATER %Vol. | SULPHUR %MM | | | DATE | TIME |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 0.9659 | 349.5 | 16.0 | 0.9653 | | 62.0 | | 0.10 | 1.48 % | | BARGE ALONGSIDE | 06/07 | 03:05 |
| | | | | | | | | | | HOSE CONNECTED | 06/07 | 03:48 |
| | | | | | | | | | | STARTED PUMPING | 06/07 | 05:10 |
| | | | | | | | | | | FINISHED PUMPING | 06/07 | 00:33 |
| | | | | | | | | | | HOSE DISCONNECTED | 06/07 | 03:40 |
| | | | | | | | | | | BARGE AWAY | 06/07 | 09:12 |

**I, the undersigned (delivering company) declare that the fuel oil is in conformity with regulation 14 (1) or 4 (a) and regulation 18 (1) of MARPOL annex VI**

The marine fuel described herein is delivered in accordance with Oiltrading SAC Standard Terms and Conditions of Sale ( a copy of which has been provided to buyer prior to delivery) and on credit of the vessel. Any disclaimers as to the creation of a maritime lien in the amount of the purchase price and delivery charges and/or restrictions as to the authority of the ship's officer signing this Receipt to bind the vessel and her owner to the above are null and void, unless an authorized representative of Oiltrading SAC shall have otherwise agreed in writing at the time Buyer initially orders the marine fuel. Failing such agreement, delivery shall, under no circumstances, constitute a waiver by Oiltrading SAC of the above

REMARKS :

BARCAZA ANTU

BARGE SAMPLE (SUPPLIER) :   SEAL# 0018244 - 0018245

BARRGE SAMPLE (VESSEL) :   SEAL# 0018242 - 0018243

BARGE ANNEX VI SAMPLE :   SEAL# 0018240 (VESSEL) - 0018241 (BARGE)

GAUGES WITNESSED BY SHIP'S REPRESENTATIVE

☐ BEFORE   ☐ AFTER   ☐ DECLINED

DELIVERING COMPANY :   **OIL TRADING SAC**

BY :

### DECLARATION OF MASTER/CHIEF ENGINEER

I declare that the information given above is true and correct to the best of my Knowledge and belief; that I have knowledge of the facts set forth herein; that the articles described in this notice of lading were received in the quantities stated, from the person, and on the date, indicated above; that said articles were laden on the vessel named above for use on said vessel as supplies. Received for use as bunkers, together with representative, sample, that quantities shown above. Exact quantities shown are subject to correction in case of error.

MASTER/CHIEF ENGINEER

BRO NORDBY



**Van-Oil**
is your bunker centre in Peru
& west coast of southamerica

# General Terms and Conditions for Sales and Deliveries of Marine Bunkers

# Van Oil
## General Terms and Conditions



**Index**

1.    Definitions ....................................................................... 4

2.    Applicability ..................................................................... 6

3.    Title and risk ................................................................... 7

4.    Delivery Schedule ............................................................ 8

5.    Delivery Cost & Other delivery issues ............................... 9

6.    Connections .................................................................. 10

7.    Quantity ........................................................................ 11

8.    Quality .......................................................................... 12

9.    Quality samples ............................................................ 13

10.   Quality Claims .............................................................. 14

11.   Nominations and ETA .................................................... 15

12.   Price & other charges .................................................... 16

13.   Payment ....................................................................... 17

14.   Cancellation and breach ................................................ 19

15.   Liens ............................................................................ 20

16.   Assignment ................................................................... 21

17.   Taxes duties and imposts ............................................... 22

18.   Termination ................................................................... 23

19.   Force majeure ............................................................... 25

20.   Liability and Indemnity ................................................... 27

21.   Arbitration ..................................................................... 28

22.   Applicable law ............................................................... 29



# Van Oil
### General Terms and Conditions



23.   Other claims .................................................................................................30

24.   Time limitation..............................................................................................31

25.   Notices..........................................................................................................32

26.   Rights, powers and remedies .......................................................................33

27.   Amendments and waivers ............................................................................34

28.   Severability ..................................................................................................35

29.   Headings ......................................................................................................36

30.   Telephone recording ...................................................................................37

31.   Conflict ........................................................................................................38

32.   Change in regulations .................................................................................39

33.   Health, safety and environment ..................................................................40

34.   Third party rights .........................................................................................42

# Van Oil
**General Terms and Conditions**



## 1.   Definitions

**Affiliate(s)** means, in relation to either of the parties to the Agreement, any company controlling, controlled by, or under common control with that party, whether directly or indirectly.

**Agreement** means these terms and conditions including any applicable special provisions.

**API** means American Petroleum Institute.

**Associated company** means any company which is a subsidiary of any of the parties to the Agreement, or a company of which a party is a subsidiary, or a company which is another subsidiary of a company of which a party is a subsidiary.

**ASTM** means American Society for Testing and Materials.

**Banking day** means a day when the banks in the specified place are open for the transaction of normal banking business.

**Business hours** means 09:30 to 17:30 in Madrid, 09:30 to 17:30 in Buenos Aires, 09:00 to 18:00 in Rio de Janeiro and 09:00 to 18:00 in Lima (whichever is applicable).

**Delivery Document** means the document(s) that certifies the delivery of Marine Fuel(s) on a certain date(s), specifying grade(s) and delivered amount(s).  Depending on delivery location, such document may also be known as "On Board Receipt", "Bunker Receipt", "Delivery Note", "Certificate of Delivered Quantity", or other names.

**ETA** means the vessel's Estimated Time of Arrival.

**Marine Fuel** means any commercial grade of bunker fuel oil and/or marine gas oil or their mixtures offered at the time and place of delivery by the Seller according to local specifications.



# Van Oil
### General Terms and Conditions



**Nomination** means the document through which the Buyer requests from the Seller a specific Marine Fuels delivery for a specific vessel in a specific bunkering port/area, and with other specific conditions or restrictions, including but not limited to dates.

**Seller's Suppliers** means any corporate body or person being a direct or indirect source of supply for the Seller.

**Special Provisions** means the terms stated by one party and confirmed by the other in a telex, facsimile, e-mail, or any other form of written communication, by which the parties may amend or supplement these general terms and conditions contained in the Agreement.

**Working days** means normal working days in the city where the Seller's office from which the sale has been agreed is located, or in the city where the delivery is to be made, whichever is applicable. A full working day means a total of 8 hours of one normal working day, or a period of 8 hours over two successive working days.



## Van Oil
**General Terms and Conditions**

## 2.    Applicability

2.1    Unless otherwise expressly agreed in writing, these General Terms and Conditions shall apply to each and every sale of Marine Fuels as defined herein by or on behalf of VAN-OIL, its associated companies or Affiliates ("Seller") into which they are incorporated by reference.

2.2    To the extent that these General Terms and Conditions are not supplemented by Special Provisions, as defined herein, Incoterms 2000 shall apply as supplementary provisions.  In case of conflict, ambiguity or inconsistency between the provisions of these General Terms and Conditions and Incoterms 2000 (and subsequent revisions), the provisions of these General Terms and Conditions shall prevail.

2.3    The Agreement, defined herein as these General Terms and Conditions together with any Special Provisions, contains the entire agreement between the Seller and the Buyer and supersedes all representations, prior agreements, oral or written, in connection with the matters which are the subject of the Agreement.  The Buyer and the Seller each warrant that it has not in connection with the Agreement relied upon any representations, written or oral, made by or on behalf of the other party, but has relied exclusively on its own knowledge, judgment and expertise.

2.4    The Agreement shall apply from the time of the Seller's written confirmation.



 

**Van Oil**
**General Terms and Conditions**

## 3.  Title and Risk

3.1  Delivery of the Marine Fuels shall be deemed completed and title and risk shall pass to the Buyer when the Marine Fuel passes the flange connecting the delivery facilities provided by Supplier with the receiving facilities provided by the Buyer.  At that point the Seller's responsibility for the Marine Fuels shall cease, and the Buyer shall assume all risk of loss or damage including but not limited to deterioration or evaporation of the Marine Fuels delivered.

3.2  Any loss of or damage to the Marine Fuels during bunkering operation, or any consequences of oil pollution, or any environmental damage or contamination of the seawater, if caused by the receiving facilities and receiving vessel or its officers or crew, shall be for the account of the Buyer.

3.3  The Buyer shall indemnify the Seller for any claim made against the Seller in respect of damage alleged by any third party to have been caused by the Buyer's vessel.





## Van Oil
**General Terms and Conditions**

## 4.    Delivery Schedule

4.1    Vessels, including tankers, will be bunkered in turn as promptly as possible, and neither the Seller nor the Supplier shall be liable for demurrage, detention or any other or different damages due to any delay caused by weather (whether usual or unusual), or for any loss due to congestion at the terminal or to prior commitments of available barges, or when security is compromised according to the Supplier's judgment.

4.2    In case of failure to arrive at the contracted day, the Seller shall endeavor to reschedule the Buyer's vessel, but shall not be liable for any attendance delays nor for any damages resulting therefrom.  In the specific case of rescheduling vessels delayed by weather conditions, berth congestion, draft restrictions, etc. for lifting bunkers, the Seller will use the "first in, first out" rule.

4.3  The Seller reserves the right to cancel any nomination without liability on the part of the Seller and without prejudice to any rights the Seller might have against the Buyer if the vessel does not arrive at delivery port or anchorage for bunker delivery within the delivery range agreed between both parties in written confirmation.



## Van Oil
**General Terms and Conditions**



# 5.  Delivery Costs and Other Delivery Issues

5.1   Delivery shall be made during normal working hours unless required at other times (including nonworking days) and permitted by Port regulations, in which event the Buyer shall reimburse the Seller or its Supplier for all additional expenses incurred in connection therewith, including but not limited to overtimes and extra fees.

5.2   All delivery extra charges, including but not limited to truck/barge overtime and wharfage extra costs, shall be for the account of the Buyer.

5.3   In case that the Buyer fails to take the whole quantity nominated, the Buyer shall be liable for any cost resulting from such failure.

5.4   If a Government permit is required for deliveries hereunder, no deliveries shall be made until the permits have been issued to the Buyer.

5.5   Once the delivery has been made, the Master/Chief Engineer/Representative of the supplied vessel shall sign and seal the relevant Delivery Document. In case of any quantity claim in such delivery, the Master/Chief Engineer/Representative of the supplied vessel shall note such quantity claim on the Delivery Document. The absence of a notation of a quantity claim shall be deemed to signify full agreement with the delivered quantity. Accordingly, quantity claims related to deliveries for which there are clean Delivery Documents will not be accepted.



Page: 9 / 42

**Van Oil** 
**General Terms and Conditions**

## 6.    Connections

6.1    The Buyer shall make all connections and disconnections between delivery hose and the vessel's intake pipe for bulk deliveries, unless otherwise agreed.

6.2    The Buyer shall render all other necessary assistance and provide sufficient tankage and equipment to receive promptly all deliveries hereunder.

6.3    The Buyer shall provide a clean, free and safe access alongside the receiving vessel to operate the Seller's delivery equipment; and shall render all necessary assistance which may reasonably be required.

# Van Oil
### General Terms and Conditions



## 7.  Quantity

7.1    Unless otherwise agreed, the quantities of the Marine Fuels loaded shall be determined from the official gauge at the delivery barge, or at the delivery truck, or at any other delivery mean, or at Supplier's shore tank, or at oil meter at the Seller's choice; from which the delivery was made and carried out in accordance with good standard practice in use at the supply area/port at the time of delivery.

7.2    The Delivery Document issued at the supply area/port shall be final and binding for the purposes of the quantity stated and the obligation of the Buyer to make payment in accordance with the Agreement.

7.3    Nothing in this clause shall prejudice the right of either party to challenge the accuracy of the measurement taken and recorded in the Delivery Document. Furthermore, the Buyer has the right to have, at its own expense, its representative or independent inspector present during measurement, but only the Seller shall make quantity determination, and such a determination shall be conclusive. In any event, the Buyer shall sign for the measurement made; and if the Buyer is not present or represented by properly accredited agent when measurements are taken, then the Supplier's determination of quantities shall be deemed to be correct.

7.4    In order for the Buyer to be represented as mentioned in clause 7.3, the Buyer shall request the Seller's permission in writing at least 48 hours before the determination of quantity takes place.



**Van Oil**
**General Terms and Conditions**



## 8.  Quality

8.1   The Marine Fuels to be supplied shall be of the quality, description or specification as set out in the Seller's written confirmation. The quality of the Marine Fuels shall be determined at the delivery port/area in accordance with the latest ASTM standards and API Manual of Petroleum Measurement Standards (MPMS) or according to good standard practice in use at the loading port at the time of shipment.

8.2   The certificate of quality (or other equivalent document) issued at the loading port shall, except in cases of manifest error or fraud, be conclusive and binding on both parties.

8.3   Unless otherwise agreed, the quality of the Marine Fuels shall be stated from a composite sample taken at the loading port in accordance with clause 9.

8.4   The Buyer shall have the sole responsibility for any determination of compatibility of Marine Fuels purchased from the Seller with fuels already on board the vessel.

8.5   There are no guarantees or warranties express or implied of merchantability fitness or suitability of the Marine Fuel for any particular purpose or otherwise, which extend beyond this subsection.

## Van Oil
**General Terms and Conditions**



# 9.    Quality Samples

9.1    The quality of the Marine Fuels shall be tested from a composite sample taken by the Seller or the Seller's representative at the source of supply (supplying barge, supplying truck or supplying terminal), in accordance with good standard practice at the supply area at the time of delivery. The sample will be retained in three sealed numbered/identified containers (name of the vessel, delivering facility, product grade, delivery date, place of delivery, and duly signed by both parties' representatives):

- Container A: "the official witness sample" to be kept at the supply source.

- Container B: "the Seller's sample" to be kept at the supply source.

- Container C: "the Buyer's sample" to be placed on board of the receiving vessel.

9.2    Any samples drawn from receiving vessel's tank/manifold shall not be valid as an indicator of the quality supplied.

9.3    In the event delivery is done by tank truck, no samples will be taken, unless requested by the Buyer in writing.



|  |  |
| --- | --- |
| Van Oil | Page: 13 / 42 |



## Van Oil
**General Terms and Conditions**

## 10. Quality Claims

10.1 Seller shall have no liability for any quality claims unless:

   **a.** a fully documented claim is presented to the Seller within 15 days of the date on which the delivery of the Marine Fuel has been completed, and

   **b.** such documentation includes a report of analysis carried out by the inspection company on the sample kept in Container C, showing that the quality of the sample in Container C is in discordance with the agreed quality differing by a greater amount than the reproducibility and repeatability as per applicable standards.

10.2 In the event that the report of analysis referred to at (b) above is not accepted by the Seller, the sample sealed in Container A shall be referred for new analysis to a mutually acceptable independent laboratory of international reputation. Each party has the right to appoint a representative for witnessing the new analysis.

10.3 The results of the new analysis shall be conclusive and binding for both parties and will determine each party's liabilities in this matter.

10.4 In case that the results prove the product to be on specification, the cost of such analysis shall be borne by the Buyer. In case that the results prove the product to be off specification, the cost of such analysis shall be borne by the Seller.

10.5 If the Buyer fails to comply with the procedure in this clause, all claims regarding quality shall be deemed to have been waived by the Buyer and no claim may be brought in respect of them.

10.6 Nothing in this Section 10 shall relieve the Buyer of its obligation to make payments in full when due as provided herein.





## Van Oil
**General Terms and Conditions**

# 11. Nominations and ETA

11.1 The Buyer shall advise the Seller, during business hours, of the vessel's nomination at least three (3) days prior to expected delivery date, unless otherwise agreed in writing.

11.2 Nomination(s) shall be given in writing and shall at least include the following:

    a. the name of the vessel and such other information as may be required by the loading terminal operator from time to time;

    b. bunkering port/ area;

    c. delivery conditions;

    d. the grades and quantities of Marine Fuels to be delivered;

    e. the prices and payment terms;

    f. the time frame when the vessel is expected to be ready for bunker supply (max span: 48hs.);

    g. the ship agent at the bunkering port/ area;

    h. the Buyer's full style and invoicing address;

    i. such other information as the Seller may reasonably require.

11.3 The Buyer hereby declares that it is familiar with all limitations of the loading port or area and shall not nominate a vessel exceeding such limitations and that in operational and technical aspects nominated vessels shall be in full compliance with all applicable international conventions as well as the domestic laws, regulations and other requirements of the country of the vessel's registry and countries, port authorities and terminals at which vessel may be loading or calling.

11.4 The Buyer shall have no right to substitute the nominated vessel.

11.5 The Buyer shall arrange for the vessel/ vessel's agent to give to the Seller or the Seller's Suppliers its ETA at the loading port by telex, cable or e-mail at least 48 hours before arrival, thereafter advising any variation. Such notice to include specifically the place where and the time when delivery is required. Location changes, if any, subject to the Seller's consent.





## Van Oil
**General Terms and Conditions**

## 12.   Price and Other Charges

12.1   The applicable Price of any product supplied shall be the one agreed in the Special Provisions; and shall remain in force during the agreed time frame.  In the absence of the mentioned time frame, the initial period agreed for delivery of the products shall be deemed to be the agreed time frame.

12.2   The Seller reserves the right to modify the Price if the vessel arrives 48 hours after expiration of the agreed time frame.

12.3   The Buyer shall be liable for all costs, expenses and/ or charges incurred by the Seller or Supplier on account of the Buyer's failure, breach and/or noncompliance with its obligations under any agreed Nomination.

12.4   All applicable taxes, duties, fees and other costs including, without limitation, those imposed by government and authorities, and barging and other delivery charges, shall be for the Buyer's account and shall be included in the Seller's invoice to the Buyer.



Page: 16 / 42



## Van Oil
**General Terms and Conditions**

## 13.  Payment

13.1  Unless otherwise agreed, payment shall be made against presentation of the invoice (telex invoice being acceptable) before or on the due date.

13.2  Payment shall be made in full by the Buyer on the payment due date without discount or deduction for whatever reason including bank transfer fees, withholding, set-off or counterclaim of any kind whatsoever, or any dispute between the parties to the Agreement.

13.3  Payment shall be made in U.S. dollars or any other convertible currency agreed in the Seller's written confirmation (at the Seller's option) by telegraphic transfer.

13.4  In the event that the due date for payment falls on a Saturday or a nonbanking day other than Monday, payment will be made on the previous banking day and in the event that the due date for payment falls on a Sunday or a nonbanking Monday, payment will be made on the following banking day (the bank holidays and banking days will be those applicable to the banking system of the currency in which the payment is to be effected).

13.5  In case that an irrevocable documentary letter of credit or stand-by letter of credit is issued:

13.5.1  all charges in respect of the letter of credit shall be for the account of the Buyer.

13.5.2  If the Buyer does not provide or provides an unacceptable letter of credit or stand-by letter of credit on or before close of normal banking business on the fifth working day prior to the first day of the agreed delivery date, the Seller may terminate the Agreement immediately without prejudice to any rights or remedies of the Seller.

13.5.3  In no event shall the Seller be obliged to commence or complete loading until the said letter of credit or stand-by letter of credit is opened at the Seller's satisfaction.

13.5.4  Any delay, costs and damages whatsoever arising from the failure of the Buyer to open the letter of credit or stand-by letter of credit as provided for in the Agreement shall be for the Buyer's account.



## Van Oil
### General Terms and Conditions



13.6   Unless otherwise agreed, the Seller's invoice shall be prepared based on the quantities stated in the Delivery Document.

13.7   Payment(s) shall be made to the Seller's bank, account name and account number as notified by the Seller to the Buyer in writing ("the payment account").

13.8   Without limitation to any of the Seller's legal rights, if the Buyer fails to pay in full any invoiced amount on the due date, the Seller shall have the right to require the payment by the Buyer of interest on any unpaid amount from the due date (shown in the final invoice) until the Seller receives cleared funds in the full amount outstanding into the Seller's payment account:

   a.   at the one month U.S. dollars Interbank offered rate (LIBOR) offered to Bank of America at 11.00 hours New York time on the due date (which is shown on the invoice) plus 4 per cent;

   b.   at the one month EURIBOR (EURIBOR1MD) offered at 11:00 a.m. (CET) on the due date (which is shown on the invoice), plus 4 per cent; whichever is applicable.

13.9   The provisions of this section shall not be construed as an indication of any willingness on the part of the Seller to provide extended credit, and shall be without prejudice to any rights and remedies the Seller may have under the Agreement or otherwise.





## Van Oil
**General Terms and Conditions**

## 14.  Cancellation and Breach

If at any time the Buyer cancels a request for Marine Fuels or the vessel fails to take delivery of part or all of the requested Marine Fuels, the Buyer and the vessel to which Marine Fuel has been delivered are liable to the Seller for all damages, costs, and losses, including but not limited to lost profits, demurrage, and incidental vessel charges thereby incurred.  The Seller may treat any breach by the Buyer of any express term of the Agreement as a breach of a condition.  In such case, the Seller may at its sole discretion accept the breach, treat the Agreement as repudiated, and/or seek such legal and contractual remedies as it considers appropriate.





# Van Oil
### General Terms and Conditions

## 15.  Liens

Where Marine Fuels are supplied to a vessel, in addition to any other security, the Agreement is entered into and Marine Fuels are supplied upon the faith and credit of the Vessel.  It is agreed and acknowledged that a lien over the Vessel is thereby created for the price of the Marine Fuels supplied and that the Seller, in agreeing to deliver Marine Fuels to the Vessel, does so relying upon the faith and credit of the Vessel.  The Buyer if not the owner of the Vessel hereby expressly warrants that he has the authority of the owner to pledge the Vessel's credit as aforesaid and that he has given notice of the provisions of this clause to the owner.  The Seller shall not be bound by any attempt by any person to restrict, limit or prohibit its lien or liens attaching to a Vessel unless notice in writing of the same is given to the Seller before he sends its written confirmation to the Buyer.





## Van Oil
**General Terms and Conditions**

## 16. Assignment

16.1 Neither party shall assign all or part of its rights and obligations under the Agreement without the written consent of the other party save that the Seller shall be free to assign its rights and obligations under the Agreement to any of its associated companies or Affiliates.

16.2 If such written consent is given the assignee of the Buyer shall fully comply with the terms of payment contained in clause 13 herein or any other payment provision substituted for clause 13 with the consent of the Seller.

16.3 The assigning party shall nevertheless remain jointly and severally liable with the assignee for the proper performance of all its obligations under the Agreement, including all payment obligations.

16.4 Any assignment not made in accordance with the terms of this clause 16 shall be void.





## Van Oil
**General Terms and Conditions**

## 17.  Taxes, Duties and Imposts

All taxes, duties and all other charges on the vessel shall be the
responsibility of the Buyer, save as provided for elsewhere in the
Agreement.  The Buyer shall also be responsible for the payment of any
taxes, duties, imposts, and fees of any description on the Marine Fuels
after the Marine Fuels pass the flange connection of the loading
vessel's delivery hose at the bunkering port/area.





## Van Oil
**General Terms and Conditions**

## 18. Termination

18.1   If either party should become insolvent, go into liquidation (other than voluntary liquidation for the purpose of corporate reconstruction), or become the debtor in bankruptcy proceedings, or if a receiver or sequestrator is appointed in respect of the assets and/or undertaking (or any part thereof) of either party, or should do or suffer any equivalent act or thing, or if either party has good reason to anticipate any such act or thing, the other party may, by written notice, immediately terminate the Agreement or immediately suspend delivery under the Agreement until further notice without prejudice to any right of action or claim accrued at the date of termination or suspension.

18.2   If the Seller has any reason whatsoever to doubt the continuing ability of the Buyer to perform its obligations hereunder, the Seller may suspend deliveries until the Buyer has either agreed to make payment in advance for future deliveries or has provided such other security as the Seller, in its absolute discretion may require or, alternatively, the Seller may terminate the Agreement by written notice without prejudice to any right of action or claim accrued to the benefit of the Seller at the date of termination.

18.3   If the Buyer should fail to pay in whole or in part the invoiced amount on the due date, the Seller may, on written notice to the Buyer, immediately suspend all or any supplies of Marine Fuels until the Buyer has paid all of the amount owing, or may, at the Seller's option, on written notice to the Buyer immediately terminate the Agreement without prejudice to any right of action or claim accrued at the date of termination.

18.4   If the Buyer should fail to take delivery of the Marine Fuels at the date specified under the Agreement (events of force majeure excepted), where a minimum quantity of Marine Fuels is to be taken by the Buyer within specified periods, the Seller may, on written notice to the Buyer, suspend all or any supplies of Marine Fuels until the Buyer has paid all of the amount owing, or may, at the Seller's option, on written notice to the Buyer immediately terminate the Agreement without prejudice to any right of action or claim accrued at the date of termination.



|  | Page: 23 / 42 |
|---|---|

# Van Oil

### General Terms and Conditions



18.5    According to clause 13.5.2, the Seller may terminate the Agreement if the Buyer does not provide or provides an unacceptable letter of credit or stand-by letter of credit on time.

18.6    Written notice of termination provided for under this clause 18 shall be effective at the time it is dispatched to the Buyer, in accordance with clause 25.



## Van Oil
**General Terms and Conditions**

## 19. Force Majeure

19.1 No failure or delay by either party to the Agreement in fulfilling any of the obligations contained in the Agreement shall give rise to any claim by one party against the other, except in relation to obligations to make payments under the Agreement, if such failure or delay arises out of force majeure, which for the purposes of the Agreement shall be any occurrence or circumstance reasonably beyond the control of that party. Examples of force majeure are, but are not limited to: acts of God, war, whether declared or undeclared, civil disorder, riot, strike, lockout, sabotage, embargo, storm, earthquake, perils of the sea, accident of navigation, fire, break-down or interruption of the functioning of installations production plant or machinery or other facilities of the Seller or of the means of transportation of the Marine Fuels, non availability of feedstock, stoppage or restraint to labor in or about the plant of the Seller or its Supplier, governmental laws, regulations or directions or acts of any officer, department agency, committee or similar bodies. For the purposes of this clause 19, the terms ''Seller'' and ''party'' where applied to the Seller shall include the Seller's relevant Suppliers and Affiliates and subsidiaries. The Seller shall not be required to make up deliveries omitted on account of the occurrence of incidents of force majeure. Notwithstanding this clause 19, the Buyer shall not be relieved of any obligation to make payment for all amounts due on Marine Fuels sold to the Buyer under the Agreement. Each party shall promptly notify the other upon occurrence of any occurrences or circumstances excusing or likely to excuse that party's nonperformance or delay under this clause 19.

19.2 If by any reason or cause reasonably beyond the control of the Seller, including but not limited to the reasons set out in clause 19.1, in the Seller's reasonable opinion there is a curtailment or shortage or interference of the Seller's sources or anticipated sources of supply, or transportation of any grade of Marine Fuels from whatever country such that the Seller is unable to meet its own planned requirements, or anticipates that it will be unable to meet its own planned requirements, and those of its associated companies and Affiliates and its requirements for sales to



| | Page: 25 / 42 |

# Van Oil
### General Terms and Conditions



customers, including the Buyer, the Seller may allocate on a fair and reasonable basis according to its own discretion, its available supply of the grades of Marine Fuels among its own requirements, those of its subsidiaries and affiliated companies and its requirements for sales to customers including the Buyer.   In no circumstances shall the Seller be required to increase its Suppliers of Marine Fuels under the Agreement by purchases or otherwise of Marine Fuels from other Suppliers.

# Van Oil
### General Terms and Conditions



## 20.  Liability and Indemnity

20.1   The Seller shall not be liable in contract or in tort or otherwise for any special, consequential or indirect loss or damage of any kind arising out of or in any way connected with the performance or failure to perform any part or parts of the Agreement, including but not limited to the negligent act or omission on the part of the Seller or its Affiliates and/or agents and/or servants of the Seller or its Affiliates, nor shall the Seller be liable for any prospective or speculative profits.

20.2   No claim by the Buyer in respect of the quality of Marine Fuels delivered, quantity of Marine Fuels delivered, or any other reason, may exceed the Agreement price except as provided for in clause 20.3 below.   The Agreement price shall be the price that should have been applied according to the Agreement terms if a Delivery Document had been issued on the agreed delivery range.

20.3   Where the loading port is not operated by the Seller or an associated company of the Seller, any claims in respect of shortage of quantity or variation of quality of the Marine Fuels shall be recoverable only in accordance with the usual terms applicable for the purchase of Marine Fuels at the loading port and the Buyer shall not be entitled to recover any costs, losses or damages incurred arising out of any shortage in quantity or variation of quality of the Marine Fuels from the Seller unless the Seller is able to recover and does recover such shortage or compensation or variation of quality from its Supplier or other relevant third party, and then only to the extent of such recovery.  The Seller shall use all reasonable efforts to recover from its Supplier or other relevant third party any such costs, losses or damages for which the Buyer has submitted a claim in accordance with the provisions of this clause.

20.4   The provisions of this clause 20 shall continue to apply notwithstanding the termination or expiry of the Agreement for any reason whatsoever.

20.5   The Buyer shall hold harmless and indemnify the Seller and/or its Supplier against all damages, costs and liabilities arising from or in consequence of any acts or omissions of the Buyer or its servants, the vessel's officers or crew; or occurring during or in connection with the delivery of Marine Fuels under the Agreement.



**Van Oil**
**General Terms and Conditions**



## 21. Arbitration

This Agreement shall be governed by and construed in accordance with Title 9 of the United States Code and the Maritime Law of the United States and any dispute arising out of or in connection with this Agreement shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for the purposes of enforcing any award, judgment may be entered on an award by any court of competent jurisdiction. The proceedings shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc. In cases where neither the claim nor any counterclaim exceeds the sum of US$100,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the Shortened Arbitration Procedure of the Society of Maritime Arbitrators, Inc. current at the time when the arbitration proceedings are commenced.

Either party may call for arbitration by service of written notice specifying the name and address of the arbitrator appointed and a brief description of the dispute(s) or difference(s) to be the subject of the Arbitration. If the other party does not within 20 days serve notice of appointment of an arbitrator to arbitrate the dispute(s) or difference(s), then the first moving party shall have the right without further notice to appoint a second arbitrator, who shall have precisely the same force and effect as if a second arbitrator had been appointed by the other party. In the event that the two appointed arbitrators fail to appoint a third arbitrator within twenty days of the appointment of the second arbitrator, either party may apply to the any court for the appointment of a third arbitrator, and the appointment of a third arbitrator will have precisely the same force and effect as if the third arbitrator had been appointed by the two appointed arbitrators.

The place of Arbitration shall be New York City. The language of the Arbitration shall be English.

Although the parties shall settle any dispute relating to this agreement by arbitration as described above, Seller expressly reserves its right to exercise any rights of restraint or seizure of whatever type or appellation of property, vessels, or any other assets as prejudgment security or in connection with execution on an award or judgment which Seller may have under any body of law.

|  | Page: 28 / 42 |



# Van Oil
**General Terms and Conditions**

## 22.  Applicable Law

22.1    The laws of United States of America shall govern the construction, validity and performance of the Agreement and the rights of the parties thereto to the exclusion of any other law which may be imputed in accordance with choice of law rules applicable in any jurisdiction.

22.2    The United Nations Convention on Contracts for the International Sale of Goods of Vienna dated 11th of April 1980, shall not apply to the Agreement.

22.3    Each party to the Agreement warrants that it has entered the Agreement in its commercial capacity.    Each party hereby irrevocably and unconditionally waives any rights of sovereign immunity (whether related to service of process, prejudgment attachment, arrest, or seizure of any kind, or attachment in aid of execution) which it may have or which it may subsequently acquire in respect of its status or any of its assets.



## Van Oil
**General Terms and Conditions**



## 23. Claims Other than Those Relating to Quantity or Quality

23.1 For all claims other than those relating to quantity or quality which are governed by specific provisions of this Agreement, Seller shall have no liability unless a fully documented claim is presented to the Seller within 15 days of the date on which the delivery of the Marine Fuel has been completed.

23.2 It is the duty of the Buyer to take all reasonable actions, including retention and burning of Marine Fuel in accordance with the Seller's instructions, to eliminate or minimize any costs associated with an off-specification or suspected off-specification supply. The Seller's obligation hereunder shall not exceed direct expenses incurred for removal and replacement of the Marine Fuel and shall not include any consequential or indirect damages, including without limitation, demurrage and any actual or prospective loss of profits. If the Buyer removes such Marine Fuel without the consent of the Seller, then all such removal and related costs shall be for the Buyer's account.

23.3 The Seller shall not be liable for any claim arising in circumstances where there is or has been commingling of Marine Fuel delivered by the Seller with other fuel aboard the Vessel or the Buyer's delivery vessel.



Page: 30 / 42

# Van Oil
### General Terms and Conditions



## 24. Time Limitation

In addition to the specific provisions and time limits established in the Agreement for specific types of claims, a party to this Agreement seeking to raise any disputes or differences whatsoever in any way connected with or arising out of or in relation to the subject matter of the Agreement shall be commenced in accordance with the arbitration provisions of clause 21 within either one year of the date of the Agreement or one year of the date of the event giving rise to the cause of action, failing which such dispute or difference shall be deemed to have been waived and shall be time barred and no claim whatsoever may be brought in respect thereof.



# Van Oil
**General Terms and Conditions**

## 25.  Notices

All notices and other communications given under the Agreement shall be in writing and unless otherwise specified in the Agreement shall be deemed to have been given and delivered when dispatched, provided the notice is dispatched within business hours, by cable or facsimile to the Seller at its address at:

**Van–Oil**
**244 Fifth Avenue, Suite 2410**
**New York, NY 10001**
**USA**
**Telephone:  (212) 561 9136**
**Fax: (801) 454 7924**

and to the Buyer at its address specified in the Agreement or invoice.

Any change of address, telephone, telex or fax details must be notified to the other party in writing, at least 14 working days prior to the change taking effect.



## Van Oil
**General Terms and Conditions**



# 26.  Rights, Powers and Remedies

26.1   No failure or delay on the part of the Seller or the Buyer in exercising any right, power or remedy under the Agreement and no course of dealing between the Seller and the Buyer shall operate as a waiver by the Seller or the Buyer of any such right, power or remedy, nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy under the Agreement.

26.2   The remedies in the Agreement provided to the Seller or the Buyer are cumulative and not exclusive of any legal rights or remedies which the Seller may otherwise have.

26.3   Except as required by the Agreement, no notice or demand upon the Seller or the Buyer in any case shall entitle the Seller or the Buyer to any other or future notice or demand in similar or other circumstances or constitute a waiver of the right of the Seller or the Buyer to take any other or future action in any such circumstances without notice or demand.



**Van Oil**
**General Terms and Conditions**



## 27.  Amendments and waivers

27.1    Any amendment or waiver of any provision of the Agreement shall not be effective unless it is made by the express written agreement of both parties.

27.2    Any waiver of any breach of any provision of the Agreement by either party shall not be considered to be a waiver of any subsequent or continuing breach of that provision unless expressly agreed otherwise by the parties in writing.

27.3    No waiver by either party of any breach of any provision of the Agreement shall release, discharge or prejudice the right of the waiving party to require strict performance by the other party of any other of the provisions of the Agreement.

27.4    Failure by either party to take action against the other party in case of any breach of any provision of the Agreement shall not be considered to be a waiver by either party of their right to take action for any subsequent breach of that or any other provision of the Agreement.

# Van Oil
**General Terms and Conditions**



## 28.  Severability

The invalidity, illegality or unenforceability of any one or more of the provisions of the Agreement shall in no way affect or impair the validity and enforceability of the other provisions of the Agreement.



# Van Oil
**General Terms and Conditions**



## 29.  Headings

All clauses, articles and section headings used in the Agreement are for convenience only and shall not affect the construction or interpretation of any of the terms and/or conditions of the Agreement.

# Van Oil
### General Terms and Conditions



## 30.  Telephone Recording

The Buyer acknowledges and consents that the Seller may electronically record telephone conversations between the Seller and the Buyer or any of the Buyer's agents, officials or servants.  In case of disagreements, misunderstandings or any other problem, the electronic record may be used for the purposes of resolving such matters.





# Van Oil
**General Terms and Conditions**

## 31.  Conflict

In the event that there is a conflict or inconsistency between the Special Provisions and the General Terms and Conditions contained in the Agreement, the Special Provisions shall prevail over the General Terms and Conditions of the Agreement.

## Van Oil
### General Terms and Conditions



## 32.  Change in Regulations

32.1  It is understood by the parties that the Seller is entering into the Agreement in reliance on the conventions, laws, rules, regulations, decrees, agreements, concessions and arrangements ("regulations") in effect on the date of the Agreement with governments, government instrumentalities or public authorities affecting directly or indirectly the Marine Fuels sold under the Agreement including, but without limitation to the generality of the foregoing, those relating to the production, acquisition, gathering, manufacturing, transportation, storage, trading or delivery of the Marine Fuels, insofar as such regulations affect the Seller or the Seller's Supplier(s).

32.2  If at any time and from time to time during the currency of the Agreement any regulations are changed or new regulations have become or are due to become effective, whether by law, decree or regulation or by response to the insistence or request of any governmental or public authority or any person purporting to act for such organizations, and the material effect of such changed or new regulations is

a.   not covered by any other provision of the Agreement; and

b.   has or will have a material adverse economic effect on the Seller,

the Seller shall have the option to request renegotiation of the price(s) or other relevant terms of the Agreement. Such option may be exercised by the Seller at any time after such changed or new regulations are notified by written notice to the Buyer, such notice shall contain the new price(s) and/or terms and conditions desired by the Seller. If the parties do not agree upon the new price(s) or terms and conditions within 15 days after the date of the Seller's notice, either party shall have the right to terminate the Agreement immediately at the end of such 15 day period. Any Marine Fuels delivered during such 15 day period shall be sold and purchased at the price(s) and on the terms and conditions specified under the Agreement without any adjustment in respect of the new or changed regulations.



## Van Oil
**General Terms and Conditions**



## 33.   Health, Safety and Environment

33.1   The Buyer shall provide all relevant third parties, including but not limited to, its employees, tanks, ship crew, and contractors, with a material safety data sheet and any other relevant information relating to the danger to health and environment of the Marine Fuels. The Buyer shall be responsible for ensuring that all relevant obligations, recommendations, international regulations directives, conventions, or guidelines are complied with.

33.2   The Buyer shall not be entitled to an indemnity from the Seller for any liability, claim or proceeding whatsoever for loss, damage or personal injury resulting from any hazards inherent in the nature of the Marine Fuels delivered under the Agreement.

33.3   If an escape, spillage or discharge of Marine Fuels (hereinafter referred to as "spill") occurs while the delivery is being made, the Buyer will promptly take such action as is reasonably necessary to remove the Marine Fuels and mitigate the effects of such spill. However, whatever may have been the cause of such a spill, the Seller (which for the purposes of this clause includes its Suppliers) is hereby authorized, at its option, upon notice to the Buyer or the Buyer's operator of, or agent for, the receiving vessel, to take such measures, either itself or in cooperation with the Buyer and incur such expenses (whether by employing its own resources or by contracting with others) as it considers reasonably necessary to remove the Marine Fuels and mitigate the effects of such spill.

33.4   If the Seller has exercised its option to remove the Marine Fuels to mitigate the effects of such spill (mentioned in 33.3), the Buyer agrees to cooperate and render such assistance as is required by the Seller in the course of such action, and to bear the costs and expenses thereof (including those of the Seller or its Suppliers) except to the extent that the negligence of the Seller or its Suppliers can be shown to have caused the spill.

33.5   The Buyer also agrees to indemnify the Seller against all claims for collision damage or other damages, costs, fines and penalties arising from any such spills mentioned in this clause 33 except to the extent that the negligence of the Seller contributed thereto.





# Van Oil
### General Terms and Conditions

33.6    If both parties have acted negligently, any expenses, disbursements and/or costs in respect of actions to remove the effects of such spills mentioned in this clause 33 shall be divided between the parties in accordance with the respective degree of negligence and culpability.

33.7    The Buyer also agrees to give or cause to be given to the Seller, all such documents and other information concerning any spill, or any program for the prevention thereof, which are requested by the Seller, or required by any international convention or standard or any domestic law or regulation applicable at the time and place at which the Seller delivers products under this Agreement.



Page: 41 / 42

## Van Oil
**General Terms and Conditions**



## 34.  Third Party Rights

No term of the Agreement shall be enforceable by any person, company or other legal entity which is not a party to the Agreement against one of the parties to the Agreement.  The parties may rescind or vary the Agreement in whole or in part, subject to the provisions of clause 16, without the consent of any third party.

### STATEMENT OF CLAIM OF

### VAN-OIL PETROLEUM LTD.

#### -against-

### BUNKERS INTERNATIONAL CORP.

1. Principal amount: USD 47,442.52
2. Interest at 4.19075% per annum from 05.08.2015 till 11.12.2015: USD 701.38
3. Legal fees of V&P Law Firm: USD 2,200
4. Legal fees of Chalos & Co.: USD 1,000

Total amount claimed by the Proof of Claim Form: **USD 51,343.90**